**Ladell SPANN, etc.,**
**Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, etc.,**
**Respondent-Appellee.**

No. 83–3030.

United States Court of Appeals,
Eleventh Circuit.

Sept. 24, 1984.

James C. Hill, Circuit Judge, filed dissenting opinion.

Mark P. Bryan, Asst. Federal Public Defender, Tampa, Fla., for petitioner-appellant.

Michael J. Kotler, Asst. Atty. Gen., Tampa, Fla., for respondent-appellee.

Before HILL and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

Ladell Spann, the appellant, was arrested in Florida in 1974 following his involvement in a murder. Following initial investigation, an assistant state attorney offered him a plea bargain whereby he would face charges of attempted grand larceny and testify against another participant in the crime. He accepted the proposal and made a sworn statement that revealed his deeper personal involvement in the crime. The state attorney reneged on the bargain before an indictment was returned. Spann then was indicted for first degree murder. At trial the judge suppressed all statements given by Spann in reliance on the plea bargain. The jury convicted Spann

and the court sentenced him to life in prison.

▮ The only issue in this appeal from the denial of Spann's habeas corpus petition is whether a defendant's mere acceptance of a prosecutor's proposed plea bargain creates a due process right to have the bargain specifically enforced. The Supreme Court recently held that no such due process right exists. *Mabry v. Johnson,* —— U.S. ——, ——, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). That holding controls the disposition of this case.

Although *Mabry* concerned the enforceability of a rescinded executory plea agreement by a defendant who had pleaded guilty pursuant to a later plea agreement, its holding need not be restricted to that context. The Court in *Mabry* premised their holding upon the fact that "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Id.* at ——, 104 S.Ct. at 2546.[1] Since the concern of the due process clause is the "manner in which persons are deprived of their liberty," *id.* at ——, 104 S.Ct. at 2547, a breached executory plea agreement without more is insufficient ground for the granting of habeas corpus relief.

▮ The dissent expresses concern that Spann's trial was rendered unfair by the use of evidence gained from him by his reliance upon the revoked plea agreement. Spann did not raise this issue in his petition for habeas corpus. It is therefore not properly before this court. *McGahee v. Massey,* 667 F.2d 1357, 1361 n. 10 (11th Cir.1982); *Messelt v. Alabama,* 595 F.2d 247, 250–51 (5th Cir.1979); *Davis v. Beto,* 368 F.2d 999, 999 (5th Cir.1966).

We accordingly affirm denial of the writ.

AFFIRMED.

JAMES C. HILL, Circuit Judge, dissenting:

I respectfully dissent because, although the majority's conclusion may well be correct, I am unable to resolve this case without further development of the facts.

In this case, the police called Spann to the station for questioning with regard to the murder of Josef Hvojnik. After receiving his *Miranda* warnings, Spann declined the opportunity to make a statement. After obtaining counsel, however, he gave the police an unsworn statement implicating another man, Herbert Mathis, in the murder. Spann then offered to take a lie detector test; in taking the test, he made several statements incriminating himself (to some extent). The day after taking the test, apparently after conferring with his lawyer, Spann entered into a plea agreement with the state's attorney: in exchange for Spann testifying against Mathis and pleading guilty to attempted grand larceny, the prosecutor would recommend a sentence of two years probation. Spann then appeared before a state judge. The judge set Spann's bond at $500 and indicated her tentative approval of the plea agreement. When Spann appeared before the grand jury, however, the prosecutor announced that he would not abide his agreement. The grand jury subsequently indicted Spann and he was tried, found guilty of first degree murder, and sentenced to life imprisonment without parole for twenty-five years.

If the record showed nothing else, I would not consider the above facts supportive of a claim of deprivation of a constitutional right. It appears, however, that Spann gave a second statement to the police sometime after he took the lie detector test. Spann's pro se pleadings in the district court indicate that he made this statement in reliance on the plea agreement. The state's brief also indicates that Spann

---

**1.** The Court noted that Arkansas law does not bind the trial court to a sentence recommendation negotiated between the prosecutor and the defendant. —— U.S. at —— n. 5, 104 S.Ct. at

2546 n. 5. Florida law at the time of Spann's trial granted to the trial judge the same discretion. *See* FLA.R.CRIM.P. 3.170(j); *Fla.R. Crim.P. 3.171(c),* 272 So.2d 65, 94 (Fla.1972).

relied on the agreement when making his statement. Brief of Appellee at 3. In this statement, Spann implicated himself. The parties have not indicated on appeal whether or not the prosecutor benefitted from the statement—by obtaining information otherwise unknown—although it appears that the prosecutor did not introduce the statement at trial.[1] Although the state argues that Spann has shown no prejudice, the prosecutor's changed attitude after receiving the statement implies that it was in some way material. Given the lenient standard by which pro se pleadings must be construed, *see e.g., Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), I would conclude that Spann has set forth enough to entitle him to an evidentiary hearing concerning the use of information given to the authorities in reliance on the plea bargain.

The majority concludes that *Mabry v. Johnson*, — U.S. —, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), controls our decision in this case. Given the facts of this case and the facts of *Mabry*, I disagree because I believe *Mabry* differs from this case in two important respects.

In *Mabry*, the defendant entered into a tentative agreement whereby the prosecutor would recommend a sentence of twenty-one years to be served concurrently with the defendant's sentences for other crimes in return for the defendant's plea of guilty to a murder charge. The prosecutor withdrew the offer and proposed instead a consecutive twenty-one year sentence. After a mistrial, the defendant agreed to the second offer and pleaded guilty. Unlike this case, in *Mabry* the defendant did not make a statement in reliance on the prosecutor's initial offer of a concurrent sentence. In addition, Spann did not plead guilty as did the defendant in *Mabry*. Thus, he did not forego his right collaterally to attack his conviction. *See Mabry*, — U.S. at —, 104 S.Ct. at 2547. The Court's analysis in *Mabry* of the effect of the initial offer on the "voluntariness" and "intelligence" of the guilty plea simply does not apply in this case.

I believe this case raises a substantial issue under the due process concept of fundamental fairness in combination with the fifth amendment right to silence now applicable to the states. Spann made his statement—foregoing his right to silence— in reliance on the prosecutor's promise. I would hold Spann's conviction unconstitutional if the prosecutor used evidence at trial obtained from Spann in reliance upon the plea agreement. Any other result would substantially encourage prosecutors to violate the fifth amendment right to silence by deception. Thus, I am of the opinion that this factual situation differs substantially from one in which the prose-

---

1. The majority holds that Spann abandoned this issue by failing to raise it on appeal. Spann instituted this action by filing a pro se petition for habeas relief in the district court. His petition incorporated a memorandum of law, page after page of which challenged the prosecutor's use of information derived from Spann's second statement to police. Spann characterized the statement, having been induced by the promise of the plea agreement, as "an inadvertent waiver of petitioner's 5th Amendment privilege against compulsory self-incrimination" and argued that the use of information thus derived "placed a constitutionally impermissible burden on [his] exercise of the privilege against compulsory self-incrimination." Record on Appeal at 10.

The district court eventually appointed counsel to represent Spann. The attorney apparently pressed Spann's contention, because the mag-

istrate who considered Spann's petition specifically rejected that argument. Record on Appeal at 164. In appealing to this court, the attorney continued to argue the correctness of Spann's position; however, he briefed the issue as if it turned on the right of Spann to have the plea bargain specifically enforced.

Under these circumstances, I question whether Spann abandoned the issue. But, even if his attorney's failure to realize the possible merit in such an argument caused him to delete a more specific reference to the issue in his brief to this court, I think that a finding of abandonment is wrong; this court should consider the issue to avoid a miscarriage of justice. See *French v. Estelle*, 696 F.2d 318, 319–20 (5th Cir.1982) (recognizing propriety of appellate court's reaching issues not properly raised on appeal under similar circumstances).

cutor simply breaks his promise without reliance and detriment on the defendant's part.[2]

The result I would reach in this case derives some support from *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), in which the Court held that the prosecutor must abide the terms of the plea agreement when the defendant pleads guilty. The result is, to a greater extent, rooted simply in the Constitutional protection against self incrimination. As the Supreme Court stated as long ago as 1897:

> [A] confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by *any direct or implied promises, however slight,* nor by the exertion of any improper influence. . . .

*Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897) (emphasis added). This standard—the so-called voluntariness standard—is of constitutional dimension and applies to state as well as federal convictions. *See Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1954). It is this principle that the prosecutor may well have violated in this case.[3]

Given the record in this case, I would remand for an evidentiary hearing for the district court to determine the specific facts concerning the plea bargain, the confession, and the use of information obtained by the confession at trial. I should not anticipate the grant, or denial of relief. I recognize that petitioner's statement was not used against him. The magistrate concluded, apparently from the exclusion of the statement, that petitioner had not been prejudiced by the abortive plea agreement. This may well prove to be accurate, but further development of the facts is required before adequate conclusions can be drawn.

I should vacate the judgment and remand for an evidentiary hearing.

---

2. I realize that my analysis does not cover all situations that might possibly arise in connection with breached plea agreements. I do not intend to comment on these unforseeable cases and limit my opinion to the present facts.

3. As Justice Harlan stated in *Shotwell Manufacturing Co. v. United States*, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963):

> It is of course a constitutional principle of long standing that the prosecution "must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth." *Rogers v. Richmond*, 365 U.S. 534, 541 [81 S.Ct. 735, 739, 5 L.Ed.2d 760]. We have no hesitation in saying that this principle also reaches evidence of guilt induced from a person under a governmental promise of immunity, and where that is the case such evidence must be excluded under the Self-In-

crimination Clause of the Fifth Amendment. See *Bram v. United States*, 168 U.S. 532, 542–543 [18 S.Ct. 183, 186–187, 42 L.Ed. 568]; *Hardy v. United States*, 186 U.S. 224, 229 [22 S.Ct. 889, 891, 46 L.Ed. 1137]; *Wan v. United States*, 266 U.S. 1, 14 [45 S.Ct. 1, 3, 69 L.Ed. 131]; *Smith v. United States*, 348 U.S. 147, 150 [75 S.Ct. 194, 196, 99 L.Ed. 192]. The controlling test is that approved in *Bram:* " 'a confession, in order to be admissible, must be free and voluntary: that is, . . . not . . . obtained by any direct or implied promises, however slight. . . .' " *Bram v. United States, supra,* [168 U.S.] at 542–543 [18 S.Ct. at 186–187]. Evidence so procured can no more be regarded as the product of a free act of the accused than that obtained by official physical or psychological coercion.

*Id.* at 347–48, 83 S.Ct. at 453.