(No. 61229.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. KATHLEEN CAROL BOYT, Appellant.

*Opinion filed December 3, 1985.—Rehearing denied February 4, 1986.*

CLARK, C.J., and GOLDENHERSH and SIMON, JJ., dissenting.

G. Joseph Weller, Deputy Defender, and Robert Hirschhorn and Michael F. Braun, Assistant Defenders, of the Office of the State Appellate Defender, of Elgin, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Mark L. Rotert and Scott Graham, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

Defendant, Kathleen Carol Boyt, was indicted by a Kane County grand jury for two counts of armed robbery. (Ill. Rev. Stat. 1983, ch. 38, par. 18—2.) Subsequently, in September 1983, defendant filed a motion to enforce a plea agreement allegedly entered into between herself and the State. Under the claimed agreement defendant was to testify against her codefendant, Johnny Banks. In exchange for her testimony, defendant was to receive a reduction of the charges, six months in the county jail, treatment in a residential drug program, and probation. Before the agreement could be consummated, Banks pleaded guilty to two counts of robbery and was sentenced to seven years in prison. Thereafter the State was unwilling to abide by the agreement, contending that no agreement ever existed and, alternatively, that defendant was not entitled to specific enforcement. Defendant stated in the circuit court and on appeal that she is willing to enter a guilty plea in accordance with the plea agreement.

The circuit court determined that a valid agreement existed and ordered specific enforcement of the plea agreement. The State refused to comply with the circuit court's order, and as a result, on November 7, 1983, the circuit court dismissed the indictments against defendant. The appellate court concluded that the circuit

court's factual finding as to the existence of the plea agreement was not against the manifest weight of the evidence. However, it held that dismissal of the indictments was "too expansive and not constitutionally mandated." (129 Ill. App. 3d 1, 20.) Accordingly, it reversed the circuit court's order and remanded for further proceedings. Thereafter, we granted defendant leave to appeal (87 Ill. 2d R. 315).

Three issues are raised on appeal: (1) Was the circuit court's order of dismissal appealable by the State pursuant to Supreme Court Rule 604(a)(1) (87 Ill. 2d R. 604(a)(1))? (2) Was the circuit court's finding that a valid plea agreement existed against the manifest weight of the evidence? and (3) Assuming a valid agreement existed, was defendant entitled, under the circumstances of this case, to specific enforcement of the plea agreement?

The evidence as to the existence of the agreement and its terms consists primarily of the narrative statements given by defendant's trial counsel and an assistant State's Attorney at the October 4, 1983, hearing on defendant's motion to enforce the plea agreement. An assistant public defender, Judith M. Brawka, related that sometime in June 1983, she was assigned by her superiors to represent defendant. She immediately began an investigation of the case and defendant's background. This investigation included an evaluation of defendant by Treatment Alternative to Street Crimes, Inc., which operates a drug-abuse rehabilitation program. According to Brawka, the evaluation revealed that defendant was a drug addict but ineligible for the program because she was charged with a violent crime, i.e., two counts of armed robbery. In addition to the drug evaluation, Brawka referred defendant to the Kane County Diagnostic Center for a diagnostic evaluation.

After the case was continued for discovery purposes and completion of the diagnostic evaluation, Brawka ap-

proached Assistant State's Attorney John Barsanti on August 3, 1983, and initiated plea negotiations on defendant's behalf. At that meeting, Brawka gave Barsanti a copy of defendant's diagnostic evaluation and explained that defendant was willing to testify against Banks. She proposed that defendant plead guilty to reduced charges, receive "some type of county jail time," and be placed in a drug-rehabilitation program in exchange for the testimony against Banks. She also told Barsanti that the Elgin police department, which had arrested defendant, did not oppose such a disposition. Barsanti, according to Brawka, responded that the proposal "sounded good to him." However, Barsanti told her that he was unwilling to agree to the proposed terms while the Banks' case was still pending. He explained to Brawka that defendant would have no incentive to testify against Banks if he agreed to the proposed disposition at that time. Brawka agreed that Barsanti's concern was reasonable. She told him that she was "going on vacation anyway," and stated that maybe he could "have something more definite or set a trial date and we will see what happens when I get back on August 22nd."

Upon returning to work on August 22, 1983, Brawka discovered that during her absence Banks had pleaded guilty to two counts of robbery and had been sentenced to seven years in prison. She contacted Barsanti and requested that defendant be allowed to plead guilty in accordance with the agreement made August 3. According to Brawka, Barsanti asked her, "Did we have a plea offer or a plea bargain?" Brawka responded that she thought that they had reached an agreement with regard to the disposition of defendant's case. She also told Barsanti that she had informed defendant by letter that an agreement had been made. Barsanti then asked Brawka to recite the terms of the agreement. Brawka stated that, according to her understanding of the plea agree-

ment, defendant was to receive six months in the county jail, treatment at a residential drug program and probation on a "charge of robbery or two charges of robbery ***." Barsanti stated that he would have to check with his superiors. The next day, on August 23, Barsanti told Brawka that his office was unwilling to agree to the terms outlined by Brawka, but would agree to a three-year prison sentence if defendant pleaded guilty to a charge of robbery. Brawka stated that she requested that Barsanti's superiors reconsider their decision, but they refused to agree to any other terms.

Brawka also related that sometime between August 3 and August 22, 1983, Barsanti engaged in plea negotiations with Banks' defense attorney. According to Brawka, Barsanti informed Banks' attorney "that if the case were to go to trial, that the State would use Kathleen Voight's [*sic*] testimony."

Barsanti stated that he had engaged in plea negotiations with Brawka concerning the disposition of defendant's case but disagreed with Brawka's conclusion that an agreement had been reached. He recalled that after Brawka presented him with a copy of defendant's diagnostic evaluation they engaged in an "informal discussion concerning the agreement." After listening to Brawka's proposal, he stated that "we probably could do something like that." He also stated that he never told Banks' attorney that he had made an agreement with defendant. He said he told Banks' attorney only that he "had her [defendant's] testimony, if needed."

Defendant testified at the October 4 hearing that she discussed the terms of the plea agreement with Brawka on more than one occasion. Defendant's understanding of the agreement was that she would be allowed to plead guilty to reduced charges, serve some "County time," and be placed in a drug-rehabilitation program, in exchange for her testimony against Banks. Defendant

stated that she assented to the terms of the agreement as they were described to her by Brawka.

Initially we consider whether the trial court's order of dismissal was appealable under this court's Rule 604(a)(1) (87 Ill. 2d R. 604(a)(1)).

The record discloses that the circuit court granted defendant's motion to enforce the negotiated plea agreement on November 3, 1983. Immediately thereafter, the following colloquy took place between the court, Assistant State's Attorney Barsanti, and Assistant Public Defender Brawka:

"MR. BARSANTI: Your Honor, I have talked this over with our appellate prosecutors. What we want to do, Judge, is we're going to refuse to enter into the agreement and I think the remedy as laid out in the other cases is for the Court to dismiss the charge and—because we're going to file a Notice of Appeal. ***

THE COURT: What about contempt? Don't I have the contempt powers? I can put someone in jail, either you or whoever is telling you not to abide by my ruling.

MR. BARSANTI: I'll go, Judge.
***

MS. BRAWKA: Respectfully, I don't think that's the appropriate remedy.

THE COURT: I understand.

MS. BRAWKA: I talked to the State Appellate Defender's Office and they indicated under the current case law the Court does not have the power to reduce charges to accept reduced pleas. And if the State refused to comply with the order, then under the inherent power of the Court to dismiss because of due process violations the Court is authorized to dismiss the charges and then the State can take an appeal from that order.

THE COURT: Are you saying, Mr. Barsanti, that you're refusing to proceed?

MR. BARSANTI: Right.

THE COURT: Then in that case the charges against Kathleen Boyt in General Number 83 CF 480 and 83 CF 481 will be dismissed."

Following the court's decision, the State requested that the court vacate its dismissal order so as to afford the State additional time in which to reconsider its decision not to comply with the court's order directing specific enforcement of the plea agreement. On November 7, 1983, Assistant State's Attorney Thomas Sullivan informed the court that the State was still unwilling to comply with the court's November 3 order. As a result, the court dismissed the charges against defendant.

Rule 604(a)(1) provides:

> "*When State May Appeal.* In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence." 87 Ill. 2d R. 604(a)(1).

The court, in construing Rule 604(a)(1), has held that the rule was not intended to reduce the State's right of appeal to only those grounds enumerated in section 114—1 (Ill. Rev. Stat. 1983, ch. 38, par. 114—1) of the statute. (*People v. Lawson* (1977), 67 Ill. 2d 449, 455.) Rather, the State has the right to appeal from "any judgment the substantive effect of which resulted in the dismissal of an indictment, information or complaint." *People v. Love* (1968), 39 Ill. 2d 436, 439.

The judgment of the circuit court in the present case certainly had the substantive effect of dismissing the indictments against defendant, and, as such, the State's right to appeal the circuit court's order normally would not be open to question. Defendant maintains, however, that dismissal of the indictments was "obtained by the State" and, as a consequence, she contends that the circuit court did not enter an "adverse" judgment from which the State could appeal. She asserts that it was er-

ror for the appellate court to deny her motion to dismiss the State's appeal. We disagree.

The record shows that the State vigorously contested the existence of the plea agreement and defendant's right to specific enforcement. Following the court's order directing specific enforcement of the agreement, the assistant State's Attorney informed the court that the State was unwilling to comply with the ruling. At that time, he suggested that dismissal of the indictments was an appropriate sanction for refusal to comply with the court order. However, as the appellate court correctly observed, dismissal was suggested only as an alternative sanction to imprisonment or a fine. At all times the assistant State's Attorney indicated a willingness to be jailed as a contemnor for refusing to comply with the order. Moreover, after the assistant State's Attorney expressed his willingness to go to jail, defense counsel told the court that imprisonment was an "inappropriate remedy." She suggested that the court was "authorized to dismiss the charges" so that the "State can take an appeal from that order." Thus, as the record shows, dismissal of the indictments was intended by the circuit court to be a sanction against the State for its refusal to abide by the court's order of specific enforcement. The dismissal was adverse to the State and appealable under Rule 604(a)(1). We turn, therefore, to the merits of the case.

Defendant argues that there was a valid plea agreement between herself and the State. She maintains that the State's repudiation of the agreement constituted a denial of due process, which can only be remedied by allowing her to obtain specific enforcement of the agreement.

It is well established that a defendant is entitled to remedial relief when a prosecutor breaches a plea agreement after the defendant has pleaded guilty. (*Santobello*

*v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495.) In *Santobello* the defendant pleaded guilty in a New York court to possession of gambling records in the second degree after the prosecutor promised to make no recommendation as to the sentence. At the sentencing hearing some months later, the prosecutor's successor, unaware of the plea agreement, recommended that the defendant receive the maximum sentence, which the judge imposed. The Supreme Court vacated the New York judgment, holding that when a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (404 U.S. 257, 262, 30 L. Ed. 2d 427, 433, 92 S. Ct. 495, 499.) The court remanded the case to the New York court to determine whether the defendant was entitled under the circumstances to the relief he sought, *i.e.*, withdrawal of his guilty plea, or to specific enforcement of the plea agreement.

The present case, of course, differs from *Santobello* because the defendant here never actually pleaded guilty in reliance on the prosecutor's promise. The prosecutor's promise was withdrawn before a plea could be entered. There are key distinctions between the two situations. By pleading guilty an accused waives important constitutional rights, including the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. (*Boykin v. Alabama* (1969), 395 U.S. 238, 243, 23 L. Ed. 2d 274, 279, 89 S. Ct. 1709, 1712.) Due process requires certain safeguards to be afforded to an accused who pleads guilty, including an on-the-record inquiry by the judge accepting the plea that it was knowingly and voluntarily entered. (395 U.S. 238, 242-44, 23 L. Ed. 2d 274, 279-80, 89 S. Ct. 1709, 1711-13.) Thus, when the prosecution breaches its promise with respect to an executed plea agreement, the defend-

ant has pleaded guilty on a false premise, and it cannot be said that his guilty plea was knowingly and voluntarily made. However, where a prosecutor withdraws from a plea agreement prior to the actual entry of the guilty plea by defendant, the same due process concerns are not necessarily implicated. *Mabry v. Johnson* (1984), 467 U.S. 504, 81 L. Ed. 2d 437, 104 S. Ct. 2543.

In *Mabry*, the defendant's murder conviction was set aside. The prosecutor then offered to recommend a certain sentence if the defendant pleaded guilty to a lesser charge. When defendant's attorney informed the prosecutor that defendant accepted the offer, the prosecutor immediately replied that the offer had been withdrawn. Thereafter, the defendant pleaded guilty to the charge pursuant to a second plea agreement. He subsequently filed a petition for a writ of *habeas corpus*, contending that his acceptance of the prosecutor's first plea proposal created a constitutional right to have that agreement specifically enforced. The Supreme Court determined that the defendant was not entitled to specific enforcement of the first agreement. The court noted that the defendant's guilty plea "was in no sense induced by the prosecutor's withdrawn offer" and, as such, defendant was not denied due process. (467 U.S. 504, 510, 81 L. Ed. 2d 437, 444, 104 S. Ct. 2543, 2548.) The court explained:

> "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution." (467 U.S. 504, 507-08, 81 L. Ed. 2d 437, 442, 104 S. Ct. 2543, 2546.)

See also *Spann v. Wainwright* (11th Cir. 1984), 742 F.2d 606; *United States v. Carbone* (2d Cir. 1984), 739 F.2d 45.

After considering the above authorities, we do not agree that due process requires specific enforcement of the present agreement. Even if it is assumed that the State accepted defendant's plea proposal, its later repudiation of the agreement is of no constitutional significance. The State's refusal to abide by the agreement did not deprive defendant "of liberty or any other constitutionally protected interest" (*Mabry v. Johnson* (1984), 467 U.S. 504, 507, 81 L. Ed. 2d 437, 442, 104 S. Ct. 2543, 2546), since she did not plead guilty to any charge in reliance on the agreement. The defendant, although understandably disappointed, was not prejudiced by the State's refusal to consummate the agreement. She did not provide the State with any new information, confess guilt, testify or otherwise incriminate herself in reliance on the State's promise.

Defendant argues that *Mabry v. Johnson* (1984), 467 U.S. 504, 81 L. Ed. 2d 437, 104 S. Ct. 2543, is inapposite because the agreement there was fully executory whereas here it was "partially executed." That is, she maintains that the State received the benefit of its bargain when it exploited the agreement by telling Banks' attorney that it "had her [defendant's] testimony, if needed." She asserts that since the State received the benefit of its bargain, due process requires that it fulfill its promise to defendant. We disagree. The concern of due process is "the manner in which persons are deprived of their liberty." (*Mabry v. Johnson* (1984), 467 U.S. 504, 511, 81 L. Ed. 2d 437, 445, 104 S. Ct. 2543, 2548. See also *Spann v. Wainwright* (11th Cir. 1984), 742 F.2d 606, 607.) Thus, the fact that the State may have received some benefit from the defendant's promise is irrelevant, unless the defendant can claim that she was deprived of her liberty in some fundamentally unfair way by conferring the benefit on the State.

Defendant also contends that this court's decision in

*People v. Starks* (1985), 106 Ill. 2d 441, requires specific enforcement of the agreement between herself and the State. In *Starks*, the defendant submitted himself to a polygraph examination allegedly based on a representation by the State that an armed-robbery charge would be dismissed if the defendant passed the test. The defendant passed the polygraph examination, but the State refused to dismiss the charge. This court held that if there was an agreement the defendant was entitled to have it specifically enforced. The decision's rationale was that specific enforcement of the agreement in *Starks* was necessary because the defendant had "surrendered his fifth amendment privilege against self-incrimination" by submitting himself to the polygraph examination. (106 Ill. 2d 441, 451.) Here, in contrast, the defendant has surrendered nothing. As such, her reliance on *Starks* is misplaced.

Plea bargaining plays an important role in our criminal justice system. It leads to prompt disposition of cases, preserves finite judicial and financial resources, and allows the State to focus its prosecutorial efforts where they are most needed. This list is not exhaustive, and there are certainly other benefits to plea bargaining. (See *Santobello v. New York* (1971), 404 U.S. 257, 260-61, 30 L. Ed. 2d 427, 432, 92 S. Ct. 495, 497-98.) Therefore, plea bargaining, when properly administered, is to be encouraged. However, to require specific enforcement here, where a requisite contingency was not met, would only deter prosecutors from engaging in plea negotiations altogether and create disputes about the existence and content of plea bargains. *Virgin Islands v. Scotland* (3d Cir. 1980), 614 F.2d 360, 364-65; 2 W. LaFave & J. Israel, Criminal Procedure 605 (1984) & 38 (Supp. 1985); Comment, *Constitutional Constraints on Prosecutorial Discretion in Plea Bargaining* (1980), 17 Hous. L. Rev. 753, 771-73.

Therefore, consistent with the dictates of the due process clause, we hold that defendant is not entitled to specific enforcement of the plea agreement. Accordingly, we need not determine whether a plea agreement actually existed. Because we deny specific enforcement, we conclude that the circuit court erred in dismissing the indictments against defendant.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE CLARK, dissenting:

In this case the circuit court found that a valid plea agreement existed between the State and the defendant and it ordered specific enforcement of that agreement. The appellate court held that the circuit court's finding that a valid plea agreement existed was not against the manifest weight of the evidence. A majority of this court now affirms the appellate court but holds that even if an agreement existed, which it states it "need not determine" (109 Ill. 2d at 417), the agreement is not enforceable because defendant Boyt never entered a guilty plea and therefore "was not prejudiced by the State's refusal to consummate the agreement" (109 Ill. 2d at 415). I cannot agree with this reasoning.

I do not believe the defendant's reliance on *People v. Starks* (1985), 106 Ill. 2d 441, is misplaced as the majority states. In *Starks,* we held that the defendant, by submitting to a polygraph examination, surrendered his fifth amendment privilege against self-incrimination, giving adequate consideration for the State's promise to dismiss the charges against him. This court stated:

"When a prosecutor enters into an agreement of this kind he has doubts about a defendant's guilt. If the defendant fails the polygraph examination, such doubts may be removed and a faltering investigation can be revi-

talized. A prosecutor is less likely to agree to concessions after a defendant's failure of a polygraph examination. He also knows that if the defendant fails the polygraph examination and then takes the stand at trial the defendant may wilt under the pressure of intense cross-examination. Additionally, there is no way of assuring that the test results will not come to the judge's attention; therefore, a defendant may be compelled, as a practical matter, to elect a jury trial. The test results may also strengthen a judgment of conviction resulting in imposition of a longer sentence or delay in parole." 106 Ill. 2d 441, 451-52.

I believe our decision in *Starks* supports an opposite result in the instant case, as the defendant contends. In the instant case it is stated:

"The State's refusal to abide by the agreement did not deprive defendant 'of liberty or any other constitutionally protected interest' [citation omitted], since she did not plead guilty to any charge in reliance on the agreement." 109 Ill. 2d at 415.

The majority further states:

"The defendant, although understandably disappointed, was not prejudiced by the State's refusal to consummate the agreement. She did not provide the State with any new information, confess guilt, testify or otherwise incriminate herself in reliance on the State's promise." 109 Ill. 2d at 415.

I cannot agree with this assessment of the facts in this case. I believe defendant Boyt's promise to testify can be analogized to the defendant's submission to a polygraph examination in *Starks*. It is evident that the defendant's promise alone was valuable to the State, since the State was able to use it to compel codefendant Banks to plead guilty. Although defendant Boyt did not give the State any "new information" *per se,* her willingness to testify was the new information needed to breathe new life into the case. Also, in agreeing to tes-

tify, the defendant did incriminate herself. Although she may not have been confessing guilt, she was at least confessing her presence and knowledge of the crime. Like in *Starks,* the defendant herein surrendered her fifth amendment privilege against self-incrimination, which I believe was adequate consideration entitling her to specific enforcement of the plea agreement.

It is essential that people participate in plea bargaining because, as the majority states, "[p]lea bargaining plays an important role in our criminal justice system" (109 Ill. 2d at 416). Because plea bargaining does play such an important role, it is essential that people believe these agreements are entered into with sincerity. Therefore, it is unjust to allow the State to renege on its agreement with this defendant after taking the "benefit of the bargain." Fundamental fairness requires that the State uphold its end of the bargain. Therefore, I respectfully dissent.

GOLDENHERSH and SIMON, JJ., join in this dissent.