**Donald G. SWORD, Petitioner,**

v.

**Duane SHILLINGER, Warden of the Wyoming State Penitentiary and The Attorney General of the State of Wyoming, Respondents.**

No. 89–255.

Supreme Court of Wyoming.

Nov. 17, 1989.

Donald G. Sword, pro se.

Joseph B. Meyer, Atty. Gen. and John W. Renneisen, Deputy Atty. Gen., for respondents.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

ORDER GRANTING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL AND ORDER DENYING PETITION FOR WRIT OF CERTIORARI, AND/OR PETITION FOR WRIT OF HABEAS CORPUS

The above captioned matter coming before the court upon the Motion for Leave to Proceed in Forma Pauperis, Motion for Appointment of Counsel and Petition for Writ of Certiorari, and/or Petition for Writ of Habeas Corpus filed by the Petitioner, Donald G. Sword, and the court having examined the file, having reviewed the matter and being fully advised in the premises finds that Petitioner, Donald G. Sword, qualifies as an indigent person and is entitled to proceed in this case in forma pauperis; and that the court having found insufficient grounds to grant relief, it is therefore

ORDERED that the Petitioner, Donald G. Sword, be, and he is hereby, granted leave to proceed in forma pauperis without being required to pay filing fees or costs; and, it is further

ORDERED that the Motion for Appointment of Counsel and the Petition for Writ of Certiorari, and/or Petition for Writ of Habeas Corpus be, and they are hereby, denied.

URBIGKIT, J., dissents and files an opinion.

URBIGKIT, Justice, dissenting.

For nearly four years now, I have argued for *one* comprehensive and complete *substantive* state court system consideration of issues raised after initial appeal, if any, when the convicted individual would be afforded that *substantive* opportunity to address either sentencing or the process and merits of guilt determination. It was at least hoped that if this state court system would do a reasonably judicious job, shoving off Wyoming cases onto the federal court system would be deterred and some reasonable access to constitutionally protected rights to justice would still be secured for the convicted person.

These four years have seen a result totally contrary to that goal of a one-time, sincerely conducted post-conviction-review process. Rather than substance, we talk waiver and forfeiture of constitutional rights and also multiply the processes. Now, we are adding one more chapter to the book of substantive non-review by ignoring reality that simplicity would be served by doing something. By just explaining "why not," we do nothing.

Through an entire course of cases, the office of the attorney general has urged a result upon this court which this court has generally tended to accept, that we settle with the excuse of waiver or default as a basis to deny review. Consistently on all post-conviction-review applications, the office of the attorney general has contended no relief was available in our state courts. As this court acceded by defection from substantive adjudication, I warned insistently that we only push the responsibility onto the federal courts if we destroy state processes which could otherwise provide a

realistic review of contended issues.[1] Consequently, petitioners such as Donald G. Sword accepted in conclusion what the attorney general claimed, what this court did, and what I said and thus have now filed their petitions to seek constitutional remedies in the federal courts.

What has now apparently happened, as illustrated here, is the office of the attorney general has now gone to the federal court and argued the petitioner has not exhausted state remedies while that same office has alternatively argued for denial of substantive review before the courts of this state's judicial system. Directly contrary faces spoke on the identical subject in the two different court systems. The incongruity of all this facade and subterfuge is that if the issues presented by the petitioners had been directly addressed in substantive review on the first opportunity presented (in the state courts), then *res judicata* would properly have been applied rather than confiscation by incompetence, which is the bell cow of forfeiture of constitutional rights by counsel default or neglect; and in the great majority of cases with processes satisfied, the guilt and sentence would be constitutionally justified and rationally affirmed.

Without question, it is not within the jurisdiction of this court to deny to the office of the attorney general the opportunity to make directly contrary presentations between the federal and state courts when we give due deference to both the federalist system of judicial powers of this nation and the internal separation of powers as provided within our state constitution. The case is, however, now back before us by the justification argued in federal court by the office of the attorney general that Sword had not exhausted *state remedies*. In my opinion, it is time to stop the ball from being bounced and to end here directly contrary legal positions from being argued before different courts and to terminate this charade in process and paperwork of exhausted time and expended financial resources. Since the office of the attorney general argued in federal court that state remedies had not been exhausted, I would accede here to what they said there, so that we should substantively address the submitted issues. This would relieve further processing and disinformation by next stage return of the petitioners to the district courts and courts of appeal of the federal judicial system as we now do by this denial of the petition for writ of certiorari.

With Wyoming post-conviction relief decimated, if not destroyed by decisions of this court for most cases, disemboweled by the office of the attorney general's demands and concurrence by the public defender followed by action of the legislature, Sword, by this proceeding, accepted the assertions of the office of the attorney general that the state rights to relief had been exhausted, although none had been provided. The office of the attorney general then argued to the contrary before the federal court. In the interest of conservation of paper, if nothing else, I would also accept that last offering of the office of the attorney general and address, substantively, arguments made by this incarcerated individual which consider the invalidity of his conviction and sentence.

A history of the Sword litigation is informative. Sword's conviction was a product of the Campbell County grand jury sessions of 1984 and 1985. *See Hennigan v. State*, 746 P.2d 360 (Wyo.1987), which spanned volumes of appellate litigation within its many indictments. Sword is one of the few, or perhaps only one, of those

---

1. The principal case on constitutional right waiver by procedural default was *Cutbirth v. State*, 751 P.2d 1257 (Wyo.1988). It was followed by the ineffectiveness of assistance of counsel denial cases, *Murray v. State*, 776 P.2d 206 (Wyo.1989); *Kallas v. State*, 776 P.2d 198 (Wyo.1989); and *Amin v. State*, 774 P.2d 597 (Wyo.1989). Other cases directed to deny the guaranty of any counseled assistance or effective counsel support include *Whitney v. State*, 745 P.2d 902 (Wyo.1987); *Bibbins v. State*, 741 P.2d 115 (Wyo.1987); *Schmidt v. State*, 738 P.2d 1105 (Wyo.1987); and *Pote v. State*, 733 P.2d 1018 (Wyo.1987). Compare for at least a brief moment where counsel would be provided until the public defender and the attorney general secured a change in the post-conviction statute, *Fondren v. State*, 749 P.2d 767 (Wyo.1988); *Alberts v. State*, 745 P.2d 898 (Wyo.1987); and *Long v. State*, 745 P.2d 547 (Wyo.1987).

involved who still remains incarcerated for his conviction which was the result of a "bargained" guilty plea.

An initial appeal after sentence, although the issue of violated plea bargain was never considered, the law student public defender function of the University of Wyoming Law School provided the appellate briefing and raised only issues of the grand jury process, *see Hennigan*, 746 P.2d 360, and abuse of discretion and extent of confinement time resulting from a three charge consecutive sentence. Issues of a state prosecutorial violation of the plea agreement and, of course, ineffectiveness of either trial or appellate counsel did not appear. The apparent plea agreement breach resulted after the prosecutor had agreed to stand mute at sentencing as part of the deal and then strongly argued to the trial court for an extended sentence after plea when appearing at the sentencing hearing. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The apparent basis for the prosecutor to ignore the agreement which he had made in the plea bargain was the statement that Sword did not adequately identify other participants in the Campbell County drug dealing after he pleaded out and before he was sentenced. Judicial consideration has never been given by any court for this purported justification whereby the prosecutor violated the plea bargain agreement.

In *Sword v. State*, 746 P.2d 423 (Wyo. 1987) (Sword I), this court affirmed the grand jury proceedings, as it had in *Hennigan*, 746 P.2d 360, albeit for a different reason, and also affirmed the length of sentence on an abuse of discretion inquiry. Sword then filed a petition for post-conviction relief pro se and requested the appointment of counsel. The text of the petition is not present in the files of this court, but the general subject can be discerned from the findings and conclusions of the trial court as a dismissal order which was entered December 6, 1988, or one day before the petitioner's objection to the proposed order had been received and filed in Campbell County. Sword had specifically asked for the appointment of counsel and that

request had been specifically denied despite a clear statutory right and this court's decisions in *Fondren v. State*, 749 P.2d 767 (Wyo.1988); *Alberts v. State*, 745 P.2d 898 (Wyo.1987); and *Long v. State*, 745 P.2d 547 (Wyo.1987). Then, he was not even given an opportunity as a pro se litigant to object before the untimely order was accepted, signed and entered by the trial court.

Issues raised in that proceeding included (a) violation of W.R.Cr.P. 15(c) regarding advice at sentencing; (b) ineffective assistance of counsel at sentencing; (c) breach of plea bargain by the prosecutor at sentencing; and (d) ineffective assistance of appellate counsel for failure to raise those same issues on direct appeal and particularly so relative to the breached plea bargain.

The State's response was that these issues were not "cognizable under the Wyoming Post–Conviction Relief Act" and "were frivolous." Since the trial court did not grant relief to Sword by appointment of licensed counsel, the petition also requested that Charles Pote, an inmate at the Wyoming State Penitentiary, be permitted to represent him and assist in presentation for the post-conviction-relief proceeding. This request was also denied. The trial court then found:

9. Defendant/Petitioner's claims of ineffective assistance of counsel at sentencing and breach of the plea bargain at sentencing are claims of error that occurred, if at all, after the proceedings resulting in Defendant/Petitioner's conviction and as such they are not subject to review by Post–Conviction Relief in Wyoming. *Sanchez v. State*, Wyo., 755 P.2d 245 (1988); *Whitney v. State*, Wyo., 745 P.2d 902 (1987).

\* \* \* \* \* \*

16. In any event, the Court is without jurisdiction to appoint an inmate of the Wyoming State Penitentiary, not licensed to practice law, to represent Defendant/Petitioner in this proceeding as Defendant/Petitioner requests.

\* \* \* \* \* \*

Defendant/Petitioner having filed a Petition for Post–Conviction Relief with a request for appointment of counsel, the State of Wyoming having moved to dismiss and objected to the appointment of counsel and the Court having conducted a hearing to inquire into this matter and being fully advised:

IT IS ORDERED that in accordance with the Findings of Fact and Conclusions of Law made by the Court, Defendant/Petitioner's request for appointment of counsel is denied, the Petition being frivolous, and the State of Wyoming's Motion to Dismiss is granted and the Petition for Post–Conviction Relief is denied.[2]

The trial court disposed of Sword's consideration of any issues raised in post-conviction relief relative to ineffectiveness of legal assistance by the following statement:

Defendant/Petitioner's claim of ineffective assistance of appellate counsel does not authorize the Court's consideration of his underlying claims of error, under the procedure provided by Section 7–14–103, W.S.1977 (1988 Cum.Supp.) and *Cutbirth v. State*, Wyo., 751 P.2d 1257 (1988), as those underlying claims of error are not cognizable by Post–Conviction Relief in Wyoming.

This order, which was simply submitted by the office of the attorney general and signed in unchanged form by the trial court, had been first submitted to Sword by letter of November 29, 1988, which recited the *right to object within five days:*

Dear Mr. Sword:

Enclosed please find a copy of proposed findings of fact, conclusions of law and order prepared as requested by the Court at the hearing on your petition held November 16, 1988. Pursuant to Rule 404 of the Uniform Rules for District Courts you must file with the Court your objections, if any, to the findings, conclusions and order within five days.

Responsive to the November 30th receipt of this communication, Sword addressed a letter to the trial judge:

Dear Judge Judson,

\*        \*        \*        \*        \*        \*

On Monday, December 5, 1988, I anticipated mailing *Petitioner's Objections to Respondent's Proposed Findings of Fact, Conclusions of Law and Order of the Court* in the above captioned case. Petitioner received the Respondent's documents on November 30, 1988. Opposing counsel, Gerald Luckhaupt, has advised the Petitioner that any objections must be made within five (5) days. This advice was provided in a letter addressed to Petitioner, dated November 29, 1988, and counsel indicates a copy of said letter has been sent to the Court. Petitioner received the documents on November 30, 1988. Petitioner needs two days in which to formulate his objections. The 3rd and 4th comprise the relevant weekend. No mail is permitted to leave the prison on weekends, thus eliminating any reasonable possibility that the responsive pleading can be mailed until the 5th.

I am writing this letter to preclude the possibility that the Court may inadvertently sign the Respondent's papers without first reviewing Petitioner's objections.

Service of a copy of this letter is being made upon Gerald Luckhaupt.

Thank you for instructing the Clerk to enter this letter on the docket.

(Emphasis in original.)

The trial court then entered the order on December 6th, and the objection arrived on December 7th, not to be considered until now by this dissent. Rules for computation of time as provided by W.R.C.P. 6 and W.R.Cr.P. 43 were obviously ignored. *See*

---

**2.** The dispositive finding was obviously tailored to fit within *Whitney,* 745 P.2d 902 to require relief to be confined to a W.R.Cr.P. 36 motion and deny availability of the constitutional reach of post-conviction relief. This is indeed a curious adjudicatory conclusion and questionable prosecutorial license. The state of the law is near unanimous that breach of the plea bargain by prosecution entitles the accused to withdraw the plea which, as based on a violated agreement and is voidable by the accused which also vacates conviction. *Santobello,* 404 U.S. 257, 92 S.Ct. 495.

*Houston v. Lack,* —— U.S. ——, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

All of this meant the uncounseled petition was denied without substantive consideration, except the trial court said, as a finding of fact, it had at time of plea adequately advised Sword. It is interesting to compare the objections made by Sword to the order which were never considered by the trial court in advance of its approval of the office of the attorney general's submission. The objection taken by Sword also cited four recent Wyoming cases: *Aden v. State,* 761 P.2d 88 (Wyo.1988); *Fondren,* 749 P.2d 767; *Alberts,* 745 P.2d 898; and *Long,* 745 P.2d 547 as authority for his statutory right to counsel. Sword reflected:

> 5. In light of the recent Supreme Court decisions, and as shown above, to continue to fail to address the question of Mr. Sword's indigence and numerous requests for appointment of counsel, is merely to require a needless shuffling of paperwork between the district and appellate courts. Clearly such is not in the best interest of judicial economy.
>
> 6. The proposed findings and conclusions of law prepared by the State, are based only upon the State's unopposed Motion to Dismiss. The Court has failed to appoint counsel to represent Mr. Sword. The Court has also failed to decide Mr. Sword's motion dated October 26, 1988, wherein the Court is asked to grant permission for Mr. Sword to rebut the State's Motion to Dismiss. At the telephonic "hearing" held on November 16, 1988, Mr. Sword was not represented by counsel. Mr. Sword is not qualified to cite competent authority, make cogent argument, or argue the merit of his Petition. As is true of most prisoners, Mr. Sword is functionally illiterate. The State would have the courts continue to take advantage of illiterate prisoners in order to better cover-up for their illegal confinement.
>
> 7. Mr. Sword respectfully suggests that he is entitled to a determination of his motions by a fair and impartial jurist. For purposes of the record, the Court has also failed to establish whether recu-

sal has been considered, as requested within the Petition for Post–Conviction Relief.

This analysis continues to be reflective of the present bouncing ball now being conducted between the state and federal courts. This is as close as Sword has ever reached to any consideration of his substantive issues of conviction and sentence, including specifically breach of a plea agreement by the prosecutor.

Following denial of the post-conviction-relief petition by the December 6, 1988 order, Sword next filed a petition for writ of certiorari in this court addressing his issue:

> Whether the district court's refusal to decide the question of indigence or to appoint counsel is violative of procedural due process, contrary to Supreme Court decisions, contrary to statutory requirements, and violates Petitioner's constitutional right to due process and equal protection of the law?

In the petition again supported by citation of this court's recent decisions of *Aden,* 761 P.2d 88; *Fondren,* 749 P.2d 767; *Alberts,* 745 P.2d 898; and *Long,* 745 P.2d 547, Sword stated in part for contention and summarized argument:

> In the interest of judicial economy, only one question will be presented to this Court on petition for a writ of certiorari. It is possible that the Court may require briefing on the many underlying issues which readily become apparent on a reading of the Petition for Post–Conviction Relief presented to the district court and the district court's Findings of Fact, Conclusions of Law and Order. Donald Sword respectfully suggests that opposing counsel has failed to plead in good faith at the district court level, and that Wyoming's statutory proscription against allowing rebuttal invites such dishonesty.

### ARGUMENT

*The district court's refusal to decide the question of indigence or to appoint counsel is violative of procedural due process, contrary to Supreme Court de-*

cisions, contrary to statutory require-
ments, and violates Petitioner's consti-
tutional right to due process and equal
protection of the law, for two indepen-
dent reasons.

1. The court-below failed to meet the
statutory requirement to determine
whether the Petitioner is without any
reasonable means to hire his own attor-
ney.

\*    \*    \*    \*    \*    \*

2. Recent Supreme Court decisions re-
quire appointment of counsel.

(Emphasis in original.) Charles Pote filed
a motion for leave to file an amicus curiae
brief reciting he had prepared all of the
pleadings (and continues to do so through
the present petition).[3] Sword filed a notice
of W.R.Cr.P. 11 violation against the office
of the attorney general which, with motion
to file the amicus curiae brief and the peti-
tion for the writ of certiorari, were denied
by this court and reconfirmed by reconsid-
eration denial on February 3, 1989 to end
that sequence of state court proceedings
during which Sword failed to receive sub-
stantive consideration of his principal com-
plaint of breached plea bargain agreement
at sentencing.

Sword next went to the federal court
where the office of the attorney general
argued that no exhaustion of state reme-
dies had occurred; which was answered by
relief denial and re-reference to state
courts for issue review and exhaustion. It
is this course which now brings us back to
an additional petition for writ of certiorari
which again we deny in order to send the
case back to the federal court system. I
get exhausted in review of all of the doc-
uments which must be only part of the
total paperwork that has been created
*while Sword still never received substan-
tive judicial review of his appellate com-*

plaints, including specifically, prosecuto-
rial breach of the plea bargain upon
which he was originally convicted and
sentenced. *Santobello,* 404 U.S. 257, 92
S.Ct. 495.

The right of the individual to have relief
when the prosecutor breaches a plea bar-
gain is unquestionable in American law.
W.R.Cr.P. 15(e) (similar to F.R.Cr.P.
11(e)(3)). *See Cardenas v. Meacham,* 545
P.2d 632 (Wyo.1976). This specific issue
was addressed in *Santobello,* 404 U.S. 257,
92 S.Ct. 495. *See also Mabry v. Johnson,*
467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437
(1984); *Machibroda v. United States,* 368
U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962);
*United States v. Blackwell,* 694 F.2d 1325
(D.C.Cir.1982); *Ex Parte Yarber,* 437 So.2d
1330 (Ala.1983); *Hall v. State,* 285 Ark. 38,
684 S.W.2d 261 (1985); *People v. Fields,* 35
Cal.3d 329, 197 Cal.Rptr. 803, 673 P.2d 680
(1983), *cert. denied* 469 U.S. 892, 105 S.Ct.
267, 83 L.Ed.2d 204 (1984); *People v.
Romero,* 712 P.2d 1081 (Colo.App.1985),
*rev'd on other grounds* 745 P.2d 1003
(1987), *cert. denied* — U.S. ——, 108 S.Ct.
1296, 99 L.Ed.2d 506 (1988); *People v. Dis-
trict Court of City and County of Denver,*
673 P.2d 991 (Colo.1983); *State v. Costa,* 64
Haw. 564, 644 P.2d 1329 (1982); *State v.
Hernandez,* 107 Idaho 947, 694 P.2d 1295
(1983); *People v. Boyt,* 109 Ill.2d 403, 94
Ill.Dec. 438, 488 N.E.2d 264 (1985), *cert.
denied* 476 U.S. 1143, 106 S.Ct. 2254, 90
L.Ed.2d 699 (1986); *Stovall v. State,* 340
N.W.2d 265 (Iowa 1983); *Com. v. Smith,*
384 Mass. 519, 427 N.E.2d 739 (1981);
*State v. Allen,* 197 Mont. 64, 199 Mont.
204, 645 P.2d 380 (1981); *Kluttz v. Ward-
en, Nevada State Prison,* 99 Nev. 681, 669
P.2d 244 (1983); *People v. Tindle,* 61
N.Y.2d 752, 472 N.Y.S.2d 919, 460 N.E.2d
1354 (1984); and *State v. Schaupp,* 111
Wash.2d 34, 757 P.2d 970 (1988). *Cf. Rick-*

---

**3.** What the Wyoming justice delivery system
does in denial of legal services to the convicted
indigent in penal institutions is what, like many
states, creates self-learned, unlicensed legal ad-
visers within the walls who also, like Charles
Pote, may write better and know more about
the criminal law than many licensed practition-
ers. The luxury of adequate time is available to
them. Charles Pote will likely be around a lot

longer than any of the present members of this
court or the legislature considering the sentence
he himself has been given as the result of the
quality of justice delivery service which was
provided to him when he received two life sen-
tences and ten years plus six months, all to be
served consecutively. *Pote,* 733 P.2d 1018; *Pote
v. State,* 695 P.2d 617 (Wyo.1985).

*etts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987).

Those issues presently presented are summarized in present "pro se" brief to show the history of the process and the summary of the issues:

On September 22, 1988, and pursuant to W.S. § 7–14–101 (Supp.1988), Donald [Sword, petitioner] filed for post-conviction relief alleging the substantial denial of his constitutional rights. Appointment of counsel was requested therein, as required under W.S. § 7–14–104 (Supp.1988). Also on September 22, 1988, Donald filed an affidavit of indigence.

On October 20, 1988, the responding State of Wyoming filed its Motion to Dismiss and Memorandum in Support of Motion to Dismiss. The theme of the state's argument was that there should be no review of constitutional claims after direct appeal. The state vehemently argued against appointment of counsel.

On October 31, 1988, Petitioner filed a motion requesting leave to file a further or amended pleading, showing that Wyoming's revised post-conviction statute prohibits a reply to the State's answer or motion to dismiss, except as the district court may order on its own motion or on that of either party.

On November 2, 1988, the district court entered a Notice of Setting, scheduling a telephonic hearing for November 16, 1988, on the State's Motion to Dismiss.

On November 10, 1988, Petitioner filed a Motion for Hearing to be Reported, and Second Motion for Appointment of Counsel. Donald specifically requested that the district court address the threshold question of indigence, and asked that the district court determine whether a reasonable person with adequate means would be willing to bring the proceeding at his own expense.

On November 16, 1988, the telephonic hearing was held and Donald Sword appeared pro se, the district court having failed to appoint counsel. Once the hearing began, Mr. Sword, who is functional-ly illiterate, requested that another prisoner be permitted to assist him in understanding the proceeding and to rebut argument presented by the State. This oral motion was denied.

On November 18, 1988, Donald Sword requested to be informed of whether the State's Motion to Dismiss had been "granted, denied, or whether further proceedings are to be held." The district court apparently scribbled a note to the Clerk on Mr. Sword's aforementioned request, indicating the State's Motion to Dismiss had been granted.

On November 29, 1988, counsel for the State sent a letter, accompanied by a copy of the State's proposed findings of fact, conclusions of law and order, advising Mr. Sword that: "Pursuant to Rule 404 of the Uniform Rules for District Courts you [Mr. Sword] must file with the Court your objections, if any, to the findings, conclusions and order within five days."

In a futile effort to prevent the district court from prematurely signing the State's proposed findings of fact, conclusions of law and order, Donald Sword mailed a letter to the District Court Judge, explaining that Mr. Sword's objections to the State's proposed findings of fact, conclusions of law and order, could not be mailed until December 5, 1988. Donald's letter was * * * dated December 1, 198[8], the same day he was served by the state.

On December 6, 1988, the district court signed the state's proposed findings of fact, conclusions of law and order without giving Donald a chance to reply.

On December 15, 1988, Donald filed for review on Petition for Writ of Certiorari, in the Wyoming Supreme Court. The State filed its Brief in Opposition, arguing against review of Donald's constitutional claims. The Wyoming Supreme Court entered its Order Denying Petition for Writ of Certiorari on May 4, 1989.

On May 10, 1989, Mr. Sword mailed his Motion for Rehearing—En Banc to the Wyoming Supreme Court. The Court denied rehearing.

The issues raised within this Petition have recently been presented to the United States District Court for the District of Wyoming on petition for a writ of habeas corpus. The federal court dismissed the petition on the ground that Mr. Sword has failed to exhaust available State remedies. *Sword v. Shillinger*, No. C89–146–K (D.Wyo. October 11, 1989).

At the federal level the State argued that Mr. Sword could petition the Wyoming Supreme Court on petition for writ of certiorari because certiorari is a discretionary writ, and that Mr. Sword could also petition for State review under the State's habeas corpus statutes. Here Mr. Sword petitions for review under both possible [s]tate remedies. In addition Sword has also presented his issues, simultaneously, to the Second Judicial District Court on petition for a writ of habeas corpus.

This petition attacks the judgment and proceedings under which Sword was sentenced to prison by the County Court of Campbell Count[y], Sixth Judicial District, Case No. 2055.

In summary of argument, Sword then claimed:

[T]hat the violations of Mr. Sword's constitutionally secured rights are not limited to errors made by the trial court, but extend to defense counsel, the prosecution, and to appellate counsel. Ineffective assistance of appellate counsel is perhaps the most disturbing issue in that appellate counsel purposely failed to bring forth the issues shown here, knowing such issues to be meritorious. Although the issues have been presented to the state court, they were presented only through a pro se effort. That the state courts refused to reach the merits is later proffered as evidence that the State of Wyoming has failed in its duty to provide a collateral forum for the ventila-

tion of constitutional rights which were, through no fault of Mr. Sword, not raised on direct appeal.

This brief will also show that the trial court violated Donald's rights under the Constitution of the United States by ignoring the requirements of Rule 15, W.R. Cr.P., for four independent reasons.

The matters raised in this petition go to the fairness of the entire course of proceedings involving Mr. Sword; the circumstances of the plea agreement; the refusal by the state to abide by the terms of the agreement; introduction of false hearsay testimony; ineffective assistance of defense counsel; prosecutorial misconduct; purposeful ineffective assistance of appellate counsel; and, strongly indicate a cover-up by appellate counsel for the benefit of trial counsel, the trial court, and the prosecutor.

Whatever the facts may generally be since relief is denied without examination in the absence of a record, it is realistically established that a plea bargain was made wherein the prosecution was to stand mute and that when the sentencing time came, the bargain was ignored; perhaps with excuse, perhaps not. In any event, the bargain was not kept by the prosecution. *Santobello*, 404 U.S. 257, 92 S.Ct. 495. Surely, at that stage, with denial of the admitted bargain by the prosecution, the accused was entitled to withdraw his plea and *he should have been so advised by both counsel and the trial court.* Not only is the issue of prosecutorial breach of the plea agreement presented, but also ineffectiveness of both trial and appellate counsel. *Osborn v. Schillinger*, 639 F.Supp. 610 (D.Wyo.1986), *aff'd* 861 F.2d 612 (10th Cir.1988); *Osborn v. State*, 672 P.2d 777 (Wyo.1983), *cert. denied* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984).[4] Obviously, we have no reasonable decision of counsel demonstrated here. *Cf. Bertolotti v. Dugger*, 883 F.2d 1503 (11th Cir.

---

4. *See Bertolotti v. Dugger,* 883 F.2d 1503, 1510 n. 5 (11th Cir.1989):

The state rule does not necessarily define a "prevailing professional norm" within the Supreme Court's use of the term. *Strickland [v. Washington],* 466 U.S. [668] at 688, 104 S.Ct.

[2052] at 2065, [80 L.Ed.2d 674 (1984) ] (referring to prevailing norms in terms of American Bar Association standards). Otherwise, the content of a fundamentally fair trial would vary from state to state.

1989).[5] We do not even know from this record whether Sword knew the prosecution had decided to ignore the plea bargain until that was exactly what was done at sentencing after the earlier appearance to enter the plea when the plea bargain should have been discussed with the court. W.R.Cr.P. 15(e) (similar to F.R.Cr.P. 11(e)(3)).

Even a law student, which is the essential argument made by Sword as to the inadequacy of the counsel service afforded, would surely have recognized that a breached plea bargain constituted a singular issue to be developed on appeal. Under the nature of this dissent, when now related to a denial by this court of present consideration of these issues by the order here entered, I will not further explore the text and tenor of the thirty-seven-page "pro se" brief now presented. Unfortunately, within this case most of the entire gamut of case-by-case denials of recent post-conviction substantive review by this court could each be hung up on a clothesline for unfriendly scrutiny, e.g., *Cutbirth v. State*, 751 P.2d 1257 (Wyo.1988) and the ineffectiveness of counsel trio, *Murray v. State*, 776 P.2d 206 (Wyo.1989); *Kallas v. State*, 776 P.2d 198 (Wyo.1989); and *Amin v. State*, 774 P.2d 597 (Wyo.1989).

I dissent in this court's present rejection of the offer of the attorney general made to the federal court for us to clean up our dirty linen by providing substantive review in these proceedings by this petition. Somebody should, and if my absolute respect for the Constitution of this state and the United States carries any power of perception, somebody will sometime be called as judicial officers to give consideration to what this petitioner claims was a deprivation of his constitutional rights.

Before that occurs, with inconsistent positions presented and judicial estoppel denied, we only continue to go around and around.

I also dissent in belief that we should "do it now" if for no other reason than to end the ball bouncing facade and also to introduce some effectiveness in conclusion of our adjudicatory business as Wyoming's constitutionally established Supreme Court.

---

**5.** A member of the federal judiciary recently stated:

> We live in a Nation in which liberty is cherished second only to life itself. Society commits no greater wrong than to convict and confine (or execute) one who may be innocent of the crimes with which he or she has been charged. No greater responsibility is reposed in the federal judiciary than the review of convictions based upon alleged constitutional violations.

*Landano v. Rafferty*, 126 F.R.D. 627, 629 (D.N.J. 1989).

I only perceive our accommodation to those of the federal system when and to the extent that the state judiciary system not only recognizes its responsibility under the federal constitution, but even more so as a third branch of Wyoming government to assure equal protection and due process under this state's constitution as well.