THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ENRICHO NAVARROLI, Defendant-Appellee.

Third District   No. 3—84—0747

Opinion filed July 21, 1986.—Rehearing denied September 19, 1986.

STOUDER, J., dissenting.

John A. Barra, State's Attorney, of Peoria (Gerry R. Arnold, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mitchell Caplan and Judith A. Halprin, both of Chicago, for appellee.

JUSTICE BARRY delivered the opinion of the court:

On September 21, 1982, the defendant, Enricho Navarroli, was charged with unlawful possession of cocaine with the intent to deliver (a Class X felony), and unlawful possession of cocaine (a Class 1 felony). The defendant subsequently filed a motion to enforce an alleged plea agreement. Under the claimed agreement, the defendant had acted as an informant in exchange for a reduction in charge and the imposition of probation. The trial court found that a valid agreement existed and ordered the State to comply with the alleged terms of the plea agreement. The State argues on appeal that the defendant failed to prove the existence of such an agreement whose terms were as the defendant alleged and that even if the agreement did exist, specific performance could not be used to enforce an unexecuted plea agreement. We reverse.

On March 15, 1984, the parties appeared before the court for the purpose of the defendant entering a blind plea to the Class X felony. In exchange, the State agreed that, although it would not stand mute, it would not seek a specific number of years for a sentence. Counsel for the defendant, however, requested a continuance because the defendant had been admitted to a hospital.

On August 27, 1984, the defendant filed a motion to compel the State to adhere to a proposed plea-bargain agreement. The defendant alleged that after his arrest in 1982, he had acted as an informant in various drug investigations in order to obtain a reduction of his Class X felony charge and a sentence of probation accompanied by a fine. According to the defendant, the plea agreement also provided that when Department of Law Enforcement Agent Joseph Hobbick reported to the State's Attorney that he was satisfied with the defendant's cooper-

ation, the State would reduce the charge and agree to a period of probation and a fine. The defendant further alleged that after he assisted law-enforcement officials, the State's Attorney refused to reduce the charge. In response, the State denied that there was any agreement to reduce the Class X felony charge so that the defendant could receive the sentence of probation.

At the hearing on the defendant's motion, the evidence established that a meeting was held in the Peoria County State's Attorney's office in June 1983. In attendance at the meeting were State's Attorney John Barra, Assistant State's Attorney Robert Gaubas, Agents Joseph Hobbick and William Haley, defense attorney Mitchell Caplan and the defendant. The purpose of the meeting was to discuss the defendant's offer of assistance in regard to other drug investigations, in exchange for which defendant sought some form of consideration for his case.

The witnesses for the State were generally in agreement that the State's Attorney made no specific promise to reduce the charges against defendant in return for his assistance in other drug investigations but that the State's Attorney did agree to consider defendant's cooperation in determining the length of sentence to recommend. The State's witnesses testified specifically that there was no promise to reduce the Class X felony charge to a lesser offense if defendant cooperated. On the other hand, defendant and his attorney testified that the State's Attorney did promise to give defendant probation and a fine if Agent Hobbick would say that defendant had done enough for him in connection with the other investigations. Agent Hobbick later wrote a letter to the State's Attorney, indicating that the defendant's assistance resulted in the arrests of two persons and that Hobbick was satisfied with defendant's cooperation.

At the conclusion of the hearing on defendant's motion, the trial court found that there was an agreement between defendant and the prosecutors and that defendant had performed his part of the agreement. As to the terms of the State's promise to defendant, the court found that the evidence was conflicting "to the degree that a fact finder could decide either way without such finding being contrary to the manifest weight of the evidence." The court then stated that whether or not the prosecution made the specific promise of probation as claimed, the reasonable inference from the evidence was that defendant so believed and that this belief was not unreasonable under the circumstances. The court ruled that defendant was entitled to receive probation and a fine, leaving to the parties and the sentencing judge the matters of reducing the charge, the length and terms of probation, and the amount of the fine.

On appeal, the State contends that the findings of the trial court were contrary to the manifest weight of the evidence, that the court erred in using a subjective standard to establish the terms of the alleged agreement, and that, as aforesaid, even if a plea agreement had been negotiated as alleged, defendant was not entitled to specific performance.

■ The determinative issue, we believe, is the State's contention that defendant is not entitled to specific performance of a plea agreement where he has not been deprived of his liberty or any other constitutionally protected interest in reliance on the agreement. Although it is well established that due process entitles a defendant to remedial relief when a prosecutor breaches an executed plea agreement (*Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495), this same due process analysis does not necessarily apply to executory plea agreements:

> "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution." *Mabry v. Johnson* (1984), 467 U.S. 504, 507, 81 L. Ed. 2d 437, 442, 104 S. Ct. 2543, 2546.

The court in *Mabry* determined to be irrelevant the negligence or culpability of the prosecutor with regard to a proposed offer which was withdrawn after acceptance. Under *Mabry*, therefore, a defendant's acceptance of a proposed plea bargain does not create a constitutional right to have the bargain enforced.

Based on the *Mabry* analysis of executory plea agreements, specific performance of a proposed plea bargain was recently rejected by the Illinois Supreme Court in *People v. Boyt* (1985), 109 Ill. 2d 403. There the defendant had allegedly agreed to testify against a codefendant in exchange for a reduction of her Class X charges. Before the agreement could be consummated, the codefendant pleaded guilty, and the State subsequently repudiated the agreement. The *Boyt* court held that even if the State initially accepted the defendant's plea proposal, its later repudiation of the agreement had no constitutional significance:

> "The State's refusal to abide by the agreement did not deprive defendant 'of liberty or any other constitutionally protected interest' [citation], since she did not plead guilty to any charge in reliance on the agreement. The defendant *** was not prejudiced by the State's refusal to consummate the agreement."

*People v. Boyt* (1985), 109 Ill. 2d 403, 415.

As to partially executed agreements whereby the State may have received some benefit from the defendant's promise, the court found that such circumstances are irrelevant unless the benefit conferred on the State has deprived the defendant of his liberty in some fundamentally unfair way.

■ In the case at bar, the defendant contends that the instant facts are analogous to those presented in *People v. Starks* (1985), 106 Ill. 2d 441, 478 N.E.2d 350. In *Starks*, the defendant had taken a polygraph examination in exchange for the State's promise that if he passed the test, the charge against him would be dismissed. The *Starks* court held that if there was an agreement, the defendant was entitled to specific performance of that agreement by virtue of his performance.

The defendant's reliance on *Starks* is misplaced. As the supreme court noted in *Boyt*, specific enforcement of the *Starks* agreement was based on the fact that the defendant had relinquished his fifth amendment right against self-incrimination by taking the polygraph examination. (See also *People v. Saunders* (1985), 135 Ill. App. 3d 594, 482 N.E.2d 85.) In the case before us, there is no evidence that the defendant was deprived of his liberty or that he surrendered any other constitutionally protected interest in reliance on the State's promise. Although the State may have received some benefit from the defendant's activities as an informant, those activities did not prejudice defendant. Absent such a showing, we find that even if the disputed agreement did exist, the defendant was not entitled to specific enforcement, and the trial court, therefore, erred in ordering the State to comply with the alleged terms. The defendant's hopes have not been fulfilled, but that does not elevate his claim to constitutional dimensions.

■ Although not necessary to our decision in this case, we also wish to comment briefly on another issue raised by the State. The trial court held that the defendant believed that a promise of probation had been made and that this belief was not unreasonable; therefore, defendant was entitled to receive probation. This ruling involved the use of a subjective test to determine the terms and validity of the alleged plea agreement. This court has previously held that the analysis of a plea agreement and whether it has been breached should be objective in nature, and consequently, the motives and justifications of the parties are largely irrelevant. *People v. Davis* (1981), 94 Ill. App. 3d 809, 419 N.E.2d 724.

We conclude that the trial court used the wrong standard when it chose to give effect to what the defendant believed had been promised

by the State rather than to make a finding as to the terms of the State's promise. The conflict in the testimony was for the trier of fact to resolve on the basis of the credibility of the witnesses. Since this was not done, the court erred.

We need not consider the manifest weight issue under these circumstances.

Accordingly, the judgment of the circuit court of Peoria County is reversed and the cause is remanded for further proceedings consistent with this decision.

Reversed and remanded.

WOMBACHER, J., concurs.

JUSTICE STOUDER, dissenting:

I respectfully dissent from the result reached by my colleagues. I believe the judgment of the trial court should be affirmed.

I disagree with my colleagues on both of the issues discussed. First of all I believe the evidence is sufficient to support the trial court's determination that an agreement existed including terms and conditions alleged by the defendant. The majority's holding to the contrary represents a reweighing of the credibility of the testimony of the witnesses and then a substitution of its opinion on whether a contract was established for that of the trial judge. I think the pertinent evidence is set forth in the majority opinion and I think three observations can be made. First, it appears undisputed that an agreement of some kind was entered into. Second, the terms of the agreement as testified to by defense counsel was never directly contradicted in the testimony. Third, the testimony in behalf of the State, while tending to show the existence of an agreement, was vague as to what the terms of the agreement were. Based on these conclusions which can be drawn from the evidence, it seems to me the trial court's conclusion finds ample support in the evidence and any conclusion it was against the manifest weight of the evidence substantially fails to give any weight to the evidence supporting the trial court's judgment.

Turning to the issue relating to the majority's holding that even if a contract existed it was unenforceable, I think a contrary result is required by the two principal Illinois cases cited, namely, *People v. Boyt* (1985), 109 Ill. 2d 403, and *People v. Starks* (1985), 106 Ill. 2d 441, 478 N.E.2d 350.

*Mabry v. Johnson* (1984), 467 U.S. 504, 507, 81 L. Ed. 2d 437, 104 S. Ct. 2543 and *Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 cited by the majority, are of some relevance in

this subject area but as applied to the factual situation in the instant case they are only of general or peripheral interest. *Santobello* indicates that the course of conduct which the prosecution undertakes as the result of plea negotiations inducing the plea of guilty may not be disregarded, and the cause was remanded to determine the State's policy of either enforcing the agreement or permitting the defendant to withdraw his plea. There can be little doubt that the rules in *Santobello* have been followed in Illinois for a considerable period of time. *Santobello* was not reversed by the *Mabry* case but does discuss a different aspect of plea negotiations. The conclusion of *Mabry* is that so long as the agreement is executory on both sides an anticipatory breach or repudiation of the agreement by the prosecution is not constitutionally impermissible and such an agreement wholly executory is unenforceable. Where, as in *Santobello*, the only obligation of the negotiated plea agreement on the part of the defendant is to plead guilty, it is partially executory and wholly performed on his part at the time his guilty plea is entered. In *Mabry*, the prosecution's agreement that a particular sentence would be served concurrently with other sentences was repudiated before the defendant pleaded guilty and hence was wholly executory at the time of the repudiation, and the court held that the subsequent agreement which the defendant did accept was the operative agreement precluding any effort to enforce the earlier repudiated agreement.

Both *Santobello* and *Mabry* deal with cases where guilty pleas were entered and were cases where the only performance expected of the defendant was his guilty plea. In *Mabry* the court reasons that a right or interest based on an executory agreement does not give rise to a liberty interest entitled to constitutional protection. It does not purpose to hold that the obligation to plead guilty when performed is the only event giving rise to a constitutionally protected liberty interest. Nor does *Mabry* purport to deal specifically with plea agreements which are wholly performed by the defendant where such performance is other than a guilty plea.

As cited in the majority opinion, *People v. Starks* (1985), 106 Ill. 2d 441, 478 N.E.2d 350, is a case where a negotiated agreement was deemed enforceable where the obligation of the defendant was to do something other than to plead guilty. The *Starks* case was discussed at some length in *People v. Boyt* (1985), 109 Ill. 2d 403, and, although approved by that court, was held inapplicable on the facts presented in *Boyt*. The *Boyt* case, which was called to our attention by the prosecution after the briefs were submitted, declined to enforce an agreement based on plea negotiations but did so because of the absence of facts

which are present in the instant case. The majority in *Boyt* concluded the plaintiff's agreement to testify against another party still remained executory where the other party pleaded guilty even though, as pointed out by the dissent, the prosecution obtained the benefit of the agreement by representing that the plaintiff's testimony would be available to support the charges. According to the majority, the defendant in *Boyt* "did not provide the State with any new information, confess guilt, testify or otherwise incriminate herself in reliance on the State's promise."

In the instant case the plea agreement contemplated that the defendant would "provide the State with *** new information" and in fact the evidence shows the defendant did provide the new information in aid of making further arrests for drug violations. Such assistance may well have constituted a waiver of the defendant's fifth amendment rights against self-incrimination. This is not a factual case as in *Boyt* where the prosecution repudiated its agreement when the defendant's performance became impossible or unnecessary. Rather the defendant performed his obligations under the agreement, as the court so found, and enforcement of the agreement is required.

I also believe the evidence amply supports the trial court's conclusion about the existence of a contract, its terms and conditions and its performance by the defendant. Although the State, in its brief, argued that such conclusions were against the manifest weight of the evidence, the majority, by way of *dicta*, has suggested that a contract was not proved because the trial court adopted a subjective standard rather than an objective standard in determining the existence of a contract. The remarks of the trial judge are quoted in the majority opinion, and I will not repeat them here. I think it is sufficient to say the judge based his decision on conflicting evidence including additional testimony, not described in the facts, including that of the defendant, his attorney, a former assistant State's Attorney, and a narcotic agent. It is undisputed that an agreement was bargained for and reached between the prosecution and the defendant, that the details of the agreement as described by defense counsel were not directly denied by the prosecution and further the prosecution's version of the agreement was both flexible and vague. In deciding what the terms of the agreement were, the judge, after reviewing the contradictory evidence, could and did remark on the reasonable inferences which the defendant could have drawn from the prosecution's admitted statements and conduct without in any way applying an improper standard to the determination of the terms and conditions of the agreement. I would affirm the judgment of the trial court.