(No. 64266.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ENRICHO NAVARROLI, Appellant.

*Opinion filed March 23, 1988.*

518

CLARK, J., dissenting.

Judith A. Halprin and Mitchell H. Caplan, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Scott Graham, Assistant Attorney General, of Chicago, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

The defendant, Enricho Navarroli, was charged on September 21, 1982, in the circuit court of Peoria County in an indictment of two counts with unlawful possession of cocaine with intent to deliver (a Class X offense) and with unlawful possession of cocaine (a Class 1 offense). There were plea negotiations between the defendant and the State's Attorney, and on August 27, 1984, the defendant moved to compel the State to carry out a claimed plea agreement. He stated that under the terms of the plea agreement, he acted as an informant in various drug investigations in exchange for the State's promise to reduce the charges against him and to agree to his being given probation plus a fine. The defendant alleged that after he assisted law enforcement officials the State's Attorney refused to reduce the charges against him. The State denied both the existence of an agreement and the claimed terms.

At a hearing on the motion, the trial court found that there had been the plea agreement the defendant claimed and it ordered "specific performance" of the agreement. The appellate court reversed (146 Ill. App. 3d 466), and we granted the defendant leave to appeal.

The evidence presented at the hearing on the defendant's motion as to whether there had been a plea agreement was sharply divided. At the conclusion of the hearing, the circuit court stated that the evidence was so conflicting that a fact finder could decide in favor of or against the motion without finding contrary to the manifest weight of the evidence. The court concluded, how-

ever, that an agreement was made and that the defendant fully performed his portion of it. Discussing the terms of the agreement, the circuit court stated:

"Whether or not the prosecution made a specific promise the defendant said it did, the reasonable inference is that the defendant believed so, and that such belief was not unreasonable under these circumstances. To preserve the sanctity of justice, the defendant must prevail. The defendant is entitled to receive probation and a fine. The reduction of the charge, the length and terms of the probation whether or not accompanied by incarceration and the amount of the fine are left to the parties and to the sentencing judge, should the defendant, in fact, plead guilty."

The appellate court, in reversing, held that even if the plea agreement did exist, the defendant was not entitled to specific performance of the agreement, because he was not deprived of his liberty or any other constitutionally protected interest in reliance on the agreement. The appellate court also judged that the circuit court improperly employed a subjective, rather than objective, test to determine the terms of the agreement. Because of this error, the appellate court did not consider whether the circuit court's conclusion that a plea agreement existed was contrary to the manifest weight of the evidence.

On appeal, the defendant argues that the circuit court's conclusion that a plea agreement existed was supported by the preponderance of evidence. He also argues that the appellate court erroneously concluded that the circuit court employed a subjective, rather than an objective, standard in resolving the conflicting testimony. The defendant claims that the circuit court's references to defendant's reasonable belief in the agreement and its terms did not make the court's conclusions ones reached on a subjective standard.

The defendant contends too that the appellate court erred in concluding that he was not entitled to specific performance of the proposed plea agreement because he was not deprived of any constitutionally protected interest. He asserts that he surrendered constitutional rights guaranteed by the first, fourth, fifth and sixth amendments in reliance upon the State's agreement to reduce the charge and recommend probation in exchange for his cooperation.

Finally, the defendant submits that the appellate court misused Rule 352, which authorizes a court to dispose of an appeal without oral argument if no substantial question is presented. The defendant says a substantial question was raised in his appeal which required more than a year for the court to decide and which resulted in a split opinion.

The State argues that even if there was a plea agreement, the defendant was not deprived of any constitutional right by virtue of the State's refusal to comply with the agreement. The defendant is at liberty to proceed to trial. The appellate court, the State says, correctly held that the defendant was not entitled to specific performance of the claimed plea bargain, and the State finally argues that the trial court incorrectly applied a subjective test determining whether there was a plea agreement.

A plea agreement results when the prosecutor and the defendant exchange promises to perform or refrain from performing specified actions. (*People v. Davis* (1981), 94 Ill. App. 3d 809.) The existence of a plea agreement and its terms and conditions are questions of fact which the trier of fact must determine after assessing the credibility of witnesses and the weight to be given their testimony. (*People v. Starks* (1986), 146 Ill. App. 3d 843.) If disputed, the terms of the agreement are to be judged under objective standards (*People v.*

*Boyt* (1984), 129 Ill. App. 3d 1, *aff'd* (1985), 109 Ill. 2d 403; *People v. Davis* (1981), 94 Ill. App. 3d 809; *United States v. Quan* (9th Cir. 1986), 789 F.2d 711), and the court's determination whether there was a plea agreement should not be reversed unless contrary to the manifest weight of the evidence. It will not be necessary for us to consider whether, as the State contends, the circuit court's finding that there was a plea agreement, as the defendant claimed, was contrary to the manifest weight of the evidence, nor need we decide whether, in making that finding, the court erroneously employed a subjective, rather than an objective, test. Even assuming, *arguendo,* that the circuit court correctly found that an agreement existed with terms as the defendant alleges, we must conclude that the prosecutor's denial of an agreement and refusal to carry out the claimed bargain did not deprive the defendant of due process, and that therefore, the defendant was not entitled to have the assumed agreement enforced.

The enforceability of plea agreements was recognized in *Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495, where the Supreme Court held that a defendant who enters a guilty plea in reliance upon the promise of the prosecutor is entitled to a remedy when the prosecutor breaches that promise. The Court cautioned that, "[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 30 L. Ed. 2d at 433, 92 S. Ct. at 499.

In *Santobello*, however, the prosecutor breached the plea agreement after the defendant entered a plea of guilty. In *Mabry v. Johnson* (1984), 467 U.S. 504, 81 L. Ed. 2d 437, 104 S. Ct. 2543, the Supreme Court determined that the same constitutional concerns are not implicated when the prosecutor takes a course of action in-

consistent with an alleged plea agreement before the defendant enters a guilty plea. In *Mabry*, the prosecutor proposed a plea bargain but then withdrew the offer after the defendant's acceptance and proposed a second, less favorable, plea agreement. The Supreme Court rejected the defendant's claim that his acceptance of the first plea bargain created a constitutional right to have that bargain specifically enforced. Relying on due process principles, the *Mabry* Court defined the scope of the constitutional protection afforded a defendant who enters a plea agreement, stating:

> "[A] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. *It is the ensuing guilty plea that implicates the Constitution.* Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here." (Emphasis added.) (467 U.S. at 507-08, 81 L. Ed. 2d at 442, 104 S. Ct. at 2546.)

The Court concluded that the defendant's guilty plea was not involuntary or induced by the withdrawn plea bargain because the defendant knew that the second agreement controlled when he pleaded guilty. Consequently, the Court held that the defendant could not challenge his plea under the due process clause because the claimed breach of the plea bargain did not deprive him of his liberty in any fundamentally unfair manner.

The Supreme Court in *Mabry* made it clear that due process principles govern the enforceability of plea agreements. (*United States v. Coon* (8th Cir. 1986), 805 F.2d 822, 824.) Therefore, the controlling issue here is whether the State's repudiation of the asserted plea agreement constituted a denial of due process, which can be remedied only by allowing the defendant specific en-

forcement of the agreement. This court recently denied enforcement of a plea agreement in a case involving circumstances resembling those here. (*People v. Boyt* (1985), 109 Ill. 2d 403.) Our holding there governs the disposition of this appeal. In *Boyt*, the defendant agreed to testify against her codefendant in exchange for the State's promise to reduce the charge against her. Before the defendant could testify, however, the codefendant pleaded guilty. When the State thereafter refused to reduce the charges, the defendant sought to enforce the bargain. This court held that, even if there had been an agreement, the defendant did not have a constitutional right under the due process clause to have the agreement enforced. The court reasoned that the State's repudiation of the agreement did not deprive the defendant of liberty or any other constitutionally protected interest because the defendant did not plead guilty in reliance on the agreement.

Here, as in *Boyt*, the defendant has not entered a plea of guilty in reliance on the proposed plea agreement. He cannot say he was deprived of liberty by virtue of the State's refusal to abide by the terms of the claimed plea agreement. The defendant still has the option of pleading not guilty and proceeding to trial.

The defendant asserts that *Boyt* does not control under the circumstances because he, unlike Boyt, surrendered constitutional rights in reliance on the agreement. Specifically, the defendant argues that he relinquished rights under the first, fourth, fifth and sixth amendments in reliance on the alleged agreement.

The defendant first claims that he surrendered his first amendment right to freedom of association when he was placed among dangerous men at the decision of State officials. He cites no authority to support this contention, nor does our research disclose any. The contention is close to frivolous.

The defendant also asserts that he surrendered his rights under the fourth amendment in reliance on the alleged plea bargain. But in this, too, he fails to point out any evidence or authority in support of this claim. He merely says that his "fourth amendment right to be free from search absent a warrant or probable cause arising in exigent circumstances was vanquished by the police policy of searching a confidential informant before and after each such directed association with suspected drug offenders." Constitutional questions cannot be raised by unsupported and conclusory allegations that a constitutionally protected right has been invaded. (*Janson v. Pollution Control Board* (1979), 69 Ill. App. 3d 324.) One must state in complete detail from the record how constitutional rights were infringed before a court will consider the constitutional objection. (See *People v. Hanserd* (1985), 136 Ill. App. 3d 928; *Consultants & Administrators, Inc. v. Department of Insurance* (1982), 103 Ill. App. 3d 920.) The defendant's general allegation that his fourth amendment rights were violated, without stating the circumstances under which the asserted constitutional rights were infringed, or submitting authority to substantiate the claimed violation, did not adequately raise a constitutional claim.

The defendant also claims that he relinquished his fifth amendment privilege against self-incrimination when he reported evidence of criminal conduct to the police of which he was aware and they were not. We disagree. The privilege against self-incrimination protects one from being compelled to disclose facts tending to establish criminal liability. (*People ex rel. Keith v. Keith* (1967), 38 Ill. 2d 405; *In re Bon Voyage Travel* (N.D. Ill. 1978), 449 F. Supp. 250). The defendant does not claim that he engaged in criminal activities in reliance on the proposed bargain, nor does he state that the police compelled him to disclose information which might tend to

incriminate him. The record suggests only that the defendant voluntarily provided the police with information regarding criminal conduct which he had witnessed in the hope of obtaining favorable treatment in regard to the charges pending against him.

Finally, the defendant claims that he surrendered his sixth amendment rights when he was subjected to post-indictment interrogation outside the presence of his counsel. The sixth amendment guarantees an accused the right to the assistance of counsel after the filing of formal charges or adversarial proceedings against him. (See *Maine v. Moulton* (1985), 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477.) Here, the defendant's sixth amendment right to counsel attached to the Class X and Class 1 drug offenses with which he was charged. The defendant did not claim, however, nor does the record suggest, that agents of the prosecution questioned him about the charges pending against him as to which the right to counsel had attached. The record does suggest that the defendant met with Illinois Department of Law Enforcement agents and gave them information about drug-related activity which occurred while the defendant was acting as an agent and informant of the State.

The sixth amendment "protects the right of the accused not to be confronted by an agent of the State *regarding matters as to which the right to counsel has attached* without counsel being present." (Emphasis added.) (*Maine v. Moulton* (1985), 474 U.S. at 177-78 n.14, 88 L. Ed. 2d at 497 n.14, 106 S. Ct. at 488 n.14.) The amendment does not prohibit police agents from questioning a defendant about criminal activity with which the defendant is not charged and as to which the sixth amendment right to counsel has not attached, simply because unrelated charges are pending against the defendant at the time. (See *State v. Lale* (Wis. App. 1987), 141 Wis. 2d 480.) The defendant's sixth amend-

ment right to counsel was not violated when he talked with State agents about criminal activities which occurred while the defendant was acting as an agent and informant for the State.

As we reject the defendant's contention that he relinquished constitutional rights in reliance on the agreement, we also reject his claim that this court's decision in *People v. Starks* (1985), 106 Ill. 2d 441, requires enforcement of the agreement. In *Starks*, the defendant submitted to a polygraph examination allegedly in exchange for the prosecutor's promise to dismiss the charges pending against him if he passed the test. The defendant passed the test, but the State refused to dismiss the charges. This court concluded that enforcement of the promise was necessary because the defendant surrendered his fifth amendment privilege in exchange for and in reliance on the proposed plea agreement. (106 Ill. 2d 441, 451.) Here, in contrast, the defendant did not surrender constitutionally protected interests in reliance on the agreement.

The defendant states he performed his part of the bargain in reliance on the agreement, making restoration of the pre-plea-agreement status impossible. He urges that specific enforcement is the only remedy which will adequately insure his rights under the due process clause.

Federal decisions have rejected similar arguments in circumstances where, as here, the defendant cooperated with government agents in reliance on an agreement, but did not enter a plea of guilty in reliance on it. In *United States v. Coon* (8th Cir. 1986), 805 F.2d 822, the defendant agreed to plead guilty to a drug offense and to cooperate with Federal authorities in narcotics investigations in exchange for the government's promise not to bring additional charges and to make no recommendation to the court regarding the sentence. The prosecutor,

through error, advised the defendant that the crime of which he was accused carried a maximum fine of $25,000. After the defendant fully cooperated with authorities, however, the parties learned that the maximum fine had been increased by statute to $250,000. The defendant pleaded guilty, knowing of the increased fine, and was fined $100,000. The defendant then sought to have his fine reduced to the amount discussed in the plea agreement. The defendant argued that by cooperating with the Federal agents, he had so changed his position in reliance on the erroneous statement in the plea agreement that he could not be restored to the pre-agreement status by pleading not guilty and proceeding to trial. The court rejected the defendant's contention, explaining:

> "The only change in position that can be considered 'detrimental reliance' is the actual entry of an involuntary guilty plea. Not until that point has the defendant been deprived of any constitutionally protected liberty interest. See *Mabry*, 104 S. Ct. at 2546. When, as in this case, the defendant learns of a change in the terms of a plea agreement prior to entering his plea, a detrimental reliance argument is inappropriate. At that stage, the defendant still has the option of pleading not guilty and proceeding to trial." 805 F.2d at 825.

Similarly, in *United States v. McGovern* (8th Cir. 1987), 822 F.2d 739, the court rejected a defendant's claim that specific performance of the government's promise was necessary to redress his detrimental reliance on the plea agreement. The defendant asserted that he cooperated with the government in reliance on the agreement and provided it with otherwise unavailable information. He contended that, as a result, he suffered substantial prejudice, and that specific performance was therefore necessary because he could not be returned to his pre-plea-agreement position. The court rejected his claim, stating that, although allowing both parties to

proceed to trial did not restore the defendant to the status quo in the sense that he could call back his year of cooperation with Federal agents, it preserved his right to a fair trial. The court concluded that none of the statements which the defendant made during the course of his plea negotiations and cooperation, nor any fruits of those statements, were used against him at his subsequent trial and that refusing to specifically enforce the plea agreement did not deprive the defendant of due process. 822 F.2d at 746.

Upon consideration of the circumstances in this case, we have concluded that the prosecutor's stated unwillingness to carry out the alleged bargain did not deprive the defendant of due process and accordingly we reject his claim that specific performance of the bargain is the only adequate remedy. Here, as in *Coon* and *McGovern*, the defendant still has the option of pleading not guilty and going to trial. His right to a fair trial is unimpaired. We agree with one court's observation that "[t]his fundamental right would be belittled if we held it to be an insufficient 'remedy' or result for a defendant who has not been induced to rely on the plea to his detriment." *Government of Virgin Islands v. Scotland* (3d Cir. 1980), 614 F.2d 360, 365.

We must reject the defendant's argument that the appellate court's judgment should be reversed because the court improperly decided the case without oral argument. There is, of course, no constitutional right to present oral argument, and Supreme Court Rule 352 allows an appellate court to dispose of a case without oral argument, after briefs are filed, if no substantial question is presented (107 Ill. 2d R. 352(a)). This court's decision in *People v. Boyt* clearly was applicable here, and we conclude that the appellate court properly determined that no substantial question was presented for its review. In any event, that we allowed leave to appeal

from the appellate court's judgment and have considered all arguments raised by the defendant removes any problem which might have been created when the appellate court disposed of the appeal without oral argument. *Cf. People v. Mitchell* (1984), 105 Ill. 2d 1, 15.

For the reasons given, the judgment of the appellate court is affirmed and the cause is remanded to the circuit court of Peoria County for further proceedings consistent with this opinion.

*Appellate court affirmed;*
*cause remanded.*

JUSTICE CLARK, dissenting:

On January 13, 1984, law enforcement agents raided a residence in Verage, Illinois, occupied by a man named Ralph Trask. Trask and a second person, Leslie Ann Larson, were arrested. In the house agents found 10 ounces of cocaine, a large quantity of marijuana, and a cache of firearms and ammunition. Since his arrest, Trask has cooperated with law enforcement authorities and has helped to dismantle the drug distribution network with which he had been associated.

This arrest was not achieved by magic. It was the result of the defendant's bargained-for cooperation with law enforcement authorities. At considerable risk to his own life and safety the defendant acted as the State's undercover agent, dealing with Trask on many occasions and often entering the Trask residence. It was the defendant's personal observation of narcotics in the Trask residence which was the basis for the State's search warrant.

During the course of his undercover work, the defendant suffered a heart attack. After recovering, he continued to work as an undercover agent. The defendant lived with his wife and son more than several miles

from the Trask residence, and the defendant had reason to believe that Trask knew where he lived.

The defendant did not risk his own life, and the lives of his family, out of the goodness of his heart. He took these risks in exchange for the State's promise that pending charges against him would be reduced and the State would recommend that he only receive probation and a fine. Nor was the State's promise to the defendant motivated by eleemosynary concern. State agents promised leniency to the defendant in return for his cooperation, cooperation from which they reaped the intended benefit.

The trial court did nothing more than enforce this bargain. I am unable to understand why the majority believes that such enforcement, after the defendant has fully performed, violates the Constitution.

Under the court's decision today, a prosecutor could persuade a defendant to swim the English Channel as consideration for a plea bargain and then, for no reason at all, break the bargain and force the defendant to go to trial. More precisely, the court's decision today *precludes* a trial court from ordering the specific performance of a plea bargain, even where the defendant has substantially performed under its terms. And while the court obviously believes its decision will benefit law enforcement authorities, it has overlooked the actual effect its decision will have on the plea bargaining process.

Today's decision throws a monkey wrench into our plea bargaining machinery. As of today, a prosecutor's promise to reduce the charges for a defendant in exchange for the defendant's assistance will not be enforceable; few informed defendants will aid the prosecution in return for a promise when they know that it is not enforceable by a trial court. Since I do not believe that the plea bargaining process should be hampered in this way, I respectfully dissent.

It is difficult to exaggerate the importance of plea bargaining to our criminal justice system. As our court has previously stated, "Whatever the situation might be in an ideal world, the fact is that agreements between the prosecution and the defense are an important component of this country's criminal justice system. [Citation.] If a defendant cannot place his faith in the State's promise, this important component is destroyed." (*People v. Starks* (1985), 106 Ill. 2d 441, 452.) One function of plea bargaining is to allow law enforcement authorities to secure information from criminal defendants who otherwise would have very little incentive to cooperate.

In the regulation of plea bargaining, the courts have applied several different perspectives. First, the due process clause imposes constitutional limitations on plea bargaining. To the extent that a defendant's guilty plea is induced by a false promise of the prosecution, the defendant's plea is involuntary; as a remedy the defendant must be granted specific performance of the prosecution's promise or an opportunity to withdraw his plea. However, plea bargaining is also to some extent contractual; courts typically speak of offer, acceptance, detrimental reliance, specific performance, and recission. Finally, the application of contract principles to plea bargaining is limited by the public interest in the efficient operation of the criminal justice system, an interest which may sometimes justify the trial court's decision to ignore or set aside the terms of a plea bargain.

I believe that all of these perspectives compel us to refrain from interfering with the trial court's decision to grant specific performance. As a matter of constitutional law, it is clear that a *fully executed* plea bargain must be honored. If the defendant pleads guilty in return for a promise which the prosecution fails to fulfill, the defendant must be granted either specific performance of the prosecution's promise or an opportunity to withdraw his

plea and proceed to trial. (*Santobello v. New York* (1971), 404 U.S. 257, 261-62, 30 L. Ed. 2d 427, 432-33, 92 S. Ct. 495, 498-99.) On the other hand, it is also clear that the Constitution does not demand the specific performance of a plea bargain which is completely executory. If the defendant has not yet pled guilty or otherwise performed the terms of the bargain, the prosecution cannot be constitutionally required to specifically perform its part of the bargain. *Mabry v. Johnson* (1984), 467 U.S. 504, 510-11, 81 L. Ed. 2d 437, 444-45, 104 S. Ct. 2543, 2548.

From the constitutional perspective, the issue posed by this case and some of our earlier cases is whether: (1) a defendant's agreement to a plea bargain is truly voluntary where the defendant is so misled as to the value of the prosecution's commitments that he does something for the benefit of the prosecution and to his own detriment other than actually pleading guilty and (2) even assuming that the defendant's agreement is voluntary, whether the Constitution *precludes* a court from specifically enforcing such a bargain. I believe that the answer to both questions is no.

First, the provision of actual consideration in addition to a mere promise distinguishes this case from *Mabry*. The Court in *Mabry* considered what might be called a "pure" plea bargain: the defendant gave his promise to plead guilty in return for the prosecution's promise of leniency. Under these circumstances, the prosecution's decision to break the bargain deprived the defendant of nothing more than the expectation that the prosecution would keep its word; conversely, the prosecution received nothing from the defendant. The status quo was restored. The prosecution did not receive the promised benefit of a guilty plea which would save it from the risk and expense of a trial; conversely, the defendant did not receive the benefit of the prosecution's leniency.

Under these circumstances, the Court held that the defendant had no constitutional right to specific performance. His ensuing guilty plea was voluntary because it had not been induced in any way by the false promise. He remained free to withdraw the plea and go to trial. Moreover, the disappointment of his mere expectation did not deprive him of a constitutionally protected interest in life, liberty, or property.

Neither of these rationales supports the denial of specific performance in this case. While the defendant still remained free to go to trial, the voluntariness of this decision had been impaired by his actual performance in response to the prosecution's promise. Moreover, even had the defendant wished to plead guilty again, he could not possibly have received the same bargain that he had initially agreed to and carried out, since the prosecution, having already received the benefit of his information, no longer needed to provide him with leniency in return for it.

Moreover, the defendant did not lose only a mere expectation. Rather, he lost his time, his labor, and his safety, as well as a significant bargaining chip. Even setting aside his time and risk involved in face-to-face meetings with a drug dealer, it is no secret that the life of a government informant in prison is never pleasant and, often, short. I am therefore puzzled by the majority's implicit conclusion that the government's conduct did not implicate the defendant's constitutionally protected right to life, liberty, and property.

For these reasons, I believe that this case stands on all fours with *People v. Starks* (1985), 106 Ill. 2d 441, where the defendant "performed" by taking a lie detector test, and is distinguishable from *People v. Boyt* (1985), 109 Ill. 2d 403, where the defendant merely promised to plead guilty. Candor compels me to admit that I still disagree with the result in *Boyt* for the rea-

sons I expressed in my dissent in that case; *Boyt* is distinguishable from *Mabry* because the prosecution in *Boyt* used the defendant's executory promises to persuade her codefendant to plead guilty, thus transforming the promises into performances. But even were I to accept *Boyt* I would still believe the majority's reliance upon it misplaced. Here the defendant did something more than make a mere executory promise. He performed. As in *Stark*, he provided the State with new information. It is this fact which estops the State from contesting the court's grant of specific performance.

I therefore believe that the court's grant of specific performance was constitutionally required. But even were I to agree that such a grant was not constitutionally required, I would still not agree with the majority's decision. For the majority appears to conclude that the Constitution somehow *precludes* the trial court from ordering specific performance of the agreement. This conclusion is without merit.

*Mabry* and the Federal cases cited by the court all involved trial courts which refused to specifically enforce plea agreements and challenges on the ground that such refusals violated the due process rights of the defendants. (See *Mabry*, 467 U.S. at 505-06, 81 L. Ed. 2d at 441, 104 S. Ct. at 2545; *United States v. McGovern* (8th Cir. 1987), 822 F.2d 739, 740-43; *United States v. Coon* (8th Cir. 1986), 805 F.2d 822, 824; *Government of the Virgin Islands v. Scotland* (3d Cir. 1980), 614 F.2d 360, 362.) None of these cases indicate that a trial court is precluded from ordering specific performance as a matter of public policy. In fact, *McGovern* clearly states that "in an agreement that contemplates the defendant's preplea cooperation as well as his plea of guilty, the government must, unless and until the court rejects the plea, honor in good faith its obligations under the agreement." (*McGovern*, 822 F.2d at 744.) In *McGovern*, the

court held only that the trial court's rejection of the plea (on the grounds of mutual mistake and violation of public policy) released the government from its obligation. Here the trial court, far from rejecting the plea, actually enforced the agreement. Therefore *McGovern* is inapplicable.

A second possible perspective is the perspective of contract law and public policy. Even assuming *arguendo* that no constitutional rights are involved, I still believe that the trial court was well within its discretion in granting specific performance. This agreement was not a commercial contract. But just as we enforce commercial contracts so as to better serve the public interest in the free flow of commercial exchange, so enforcement of executed or partially executed plea bargains serves the public interest in the efficient administration of justice. We do law enforcement authorities no favor when we decide they cannot be held to their agreements. In the long run that decision can only undermine their ability to persuade defendants to cooperate. I acknowledge that in this instance there is room for dispute as to whether an agreement was actually reached. But, after examining the record, I see no reason to disagree with the trial court's conclusion that someone in the defendant's position would be objectively justified in believing that the government was promising leniency in return for his cooperation. I respectfully dissent.