THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID N. UMFLEET, Defendant-Appellant.

Fifth District   No. 5—87—0170

Opinion filed October 12, 1989.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Richard Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, and Garry W. Bryan, of Decatur, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

The defendant, David Umfleet, entered a negotiated plea of guilty on July 3, 1980, to home invasion and was sentenced to 21 years' imprisonment. The defendant now appeals the denial of his petition for post-conviction relief by the circuit court of Madison County.

On February 5, 1979, the defendant and two other persons kidnapped Robert Herman in St. Louis County, Missouri. They took Herman's car and wallet at gunpoint and forced him into the trunk of a car. They then drove to rural Madison County, Illinois, where the defendant and one of the other individuals forced their way into the residence of Sidney Daugherty at gunpoint.

The defendant was charged with several offenses in the circuit court of St. Louis County, Missouri. He was also charged with burglary and, in an amended information, with home invasion in Madison County, Illinois.

On December 3, 1979, the defendant entered a negotiated plea of guilty to kidnapping and armed robbery in the circuit court of St. Louis County. The defendant was sentenced on January 10, 1980, to 17 years' imprisonment in accordance with the negotiated plea.

At the Missouri plea proceedings on December 3, the Missouri prosecutor, Gordon Ankney, stated:

"I want to put on the record I did have a conversation this morning with Mr. Steven [*sic*] Mudge, who is the prosecuting attorney in Madison County, who is prosecuting this defendant on the charge of home invasion or robbery in Illinois. This largely is an outgrowth of this incident. He informed me originally that the prosecutor there would ask for between 15 and 20 years concurrent. When I told him I thought the defendant would get 17 years, he indicated to me that the defendant, he would recommend in Illinois the defendant get 17 years concurrent."

At the same proceeding, the defendant's Missouri counsel, Frank

Anzalone, added:

> "I would also state I talked to the defendant and quite obviously the defendant would never plead guilty unless I had some indication that this was worked out in Illinois. *** I can tell you that the defendant would not have pled guilty had it not been for that recommendation from Illinois."

Anzalone asked the defendant: "You will not have plead [*sic*] guilty to begin with unless you knew you were going to get 17 years in Illinois run to ether [*sic*]?" The defendant responded in the affirmative. After admonishing the defendant that the court was not bound by whatever occurred in Illinois, the Missouri court accepted the defendant's plea.

At the sentencing hearing on January 10, 1980, the defendant attempted to withdraw his plea. He argued that because he had not yet been sentenced in Illinois, the underlying agreement behind his plea was not fulfilled. The Missouri court rejected this argument and denied defendant's motion to vacate and pronounced a sentence of 17 years. During the sentencing hearing the defendant's counsel, Frank Anzalone, stated:

> "I had informed [the defendant] that I had a conversation with Mr. Steven [*sic*] Mudge, who was the prosecuting attorney or state's attorney in Madison County. *** That we had reached an agreement in fact that the defendant would receive, if defendant pled guilty to a 17 year recommendation here, that in fact he would receive a concurrent sentence in Illinois. It is on the record and I did inform the defendant and it was on the record that I informed the defendant that. That, in fact, that agreement had been reached in Illinois. That he would receive a concurrent 17 years, and it was stated on the record that this promise was made to him and this promise was one of the reasons he was pleading guilty."

On July 3, 1980, the defendant entered a negotiated plea of guilty to home invasion in the circuit court of Madison County, Illinois. During the plea proceedings, the defendant was specifically admonished that the State's recommendation involved a 21-year term of imprisonment. Defendant and defense counsel concurred in the plea agreement and a 21-year sentence was imposed by the court.

On February 25, 1981, the defendant filed a "motion to vacate judgment and sentence." One allegation of that motion was that there had been a prior plea agreement for a 17-year sentence which the defendant's Illinois counsel failed to seek to have enforced. Counsel was appointed to represent the defendant and a post-conviction peti-

tion was filed on August 20, 1982. An amended petition was filed on March 16, 1984.

An evidentiary hearing was held on the defendant's petition on October 3, 1985. The defendant was not present at this hearing. Stephen Mudge testified that he did not "recall entering into any agreement with either a defense attorney or a prosecuting attorney in Missouri." He stated that he "didn't have any agreement with anyone other than what was consummated on the day of the plea" and that he did not "have any recollection of any agreement with Ankne [sic] or this Abalone or Ansalone [sic]" concerning a sentencing agreement for 17 years' imprisonment. Mudge also testified that he would not have agreed to a 17-year sentence because Mr. Daugherty, one of the victims in the case, had contacted Mudge prior to the arrival of the defendant in Illinois and was "adamant" that the defendant serve additional time for his actions in Illinois. Mudge testified that Daugherty "somehow got wind that perhaps a negotiated plea was being attempted to be worked out in the case."

Leonard Berg testified that he had represented the defendant at the guilty plea hearing in Illinois. During his discussions with the defendant concerning the guilty plea, the defendant voiced his concern about the original plea agreement for 17 years not being followed. "[I]n his mind it seemed to be a violation of whatever agreement that supposedly Mr. Ankne [sic] the Special [sic] Prosecutor in Missouri, had reached supposedly with Mr. Mudge."

On January 22, 1987, another hearing was held at which the defendant testified that his Missouri attorney "had made an agreement with Stephen Mudge that once I plead guilty over here I would receive a seventeen-year concurrent sentence." He also testified that Berg did not check into the agreement reached by his Missouri attorney. When asked why he did not object at the guilty plea to the 21-year sentence he testified: "I didn't know I was supposed to say anything. I was just going by what I was told to do. I didn't know nothing about court procedures. I didn't know I could object to anything at that time." The court asked the defendant: "How did you think this was going to convert from twenty-one years to seventeen years?" The defendant answered: "I didn't know at that time. *** I was pretty scared at that time, you know."

In its written order, the court found that the defendant subjectively believed that he had an agreement for a 17-year sentence. The court stated, however, that the "purported agreement was denied by the other counsel involved in this case" and found that the agreement was not proven. Post-conviction relief was accordingly denied.

On appeal, defendant argues that the circuit court's finding that no agreement was reached was against the manifest weight of the evidence and he asks this court to enforce the agreement for a 17-year sentence. The defendant also argues, albeit briefly, that his attorney was ineffective in failing to investigate his claim of a plea agreement and in failing to make any attempt to enforce the agreement.

■ Before reaching the merits of the defendant's claims, we briefly address the State's arguments that the defendant has waived any allegations of error. The State points out that a voluntary guilty plea waives all errors, defects, and irregularities in the proceeding that are not jurisdictional, including constitutional error. While we have no quarrel with this statement as an abstract proposition of law, it has, of course, no bearing on the instant case. A waiver of issues results from entering a guilty plea only when the plea is voluntary. (*People v. Ondrey* (1976), 65 Ill. 2d 360, 357 N.E.2d 1160; *People v. Brumas* (1986), 142 Ill. App. 3d 178, 180, 491 N.E.2d 773, 775.) A plea of guilty made in reliance on the prosecution's unfulfilled promise is not voluntary. (*Santobello v. New York* (1971), 404 U.S. 257, 262, 30 L. Ed. 2d 427, 433, 92 S. Ct. 495, 499; *People v. Langston* (1984), 125 Ill. App. 3d 479, 481, 466 N.E.2d 268, 269; *People v. Mitchell* (1986), 143 Ill. App. 3d 378, 381, 493 N.E.2d 623, 625.) The State also argues that the defendant has waived his right to enforce the plea agreement by his failure to file a motion to withdraw the guilty plea under Supreme Court Rule 604(d) (107 Ill. 2d R. 604(d)).

■ While it is true that Rule 604(d) establishes a condition precedent for an appeal from a defendant's plea of guilty (*People v. Wilk* (1988), 124 Ill. 2d 93, 105, 529 N.E.2d 218, 222), a defendant's failure to file a motion to withdraw his guilty plea does not foreclose the possibility of review. For such a defendant, the appropriate remedy lies in the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*; see *Wilk*, 124 Ill. 2d at 107, 529 N.E.2d at 223; *People v. Culp* (1984), 127 Ill. App. 3d 916, 468 N.E.2d 1328). Although the Act is not an alternative means for reviewing nonconstitutional issues, relief is available where a defendant's constitutional rights have been violated. (See *Wilk*, 124 Ill. 2d at 107, 529 N.E.2d at 223.) In the instant case, the defendant claims that the unfulfilled plea agreement violated his constitutional right to due process. Furthermore, his claim of ineffective assistance of counsel implicates his rights under the sixth amendment.

The State further argues that the defendant's claim must fail because the State's Attorney's duty under the purported plea agreement was limited to recommending a 17-year sentence and such a rec-

ommendation is not binding upon the sentencing court. As this court has previously stated, "[i]t is of no consequence that a recommendation, if made, would not have been binding on the court imposing sentence, for defendant might well have thought the court imposing sentence would have given some consideration to the recommendation." (*People v. Mitchell* (1986), 143 Ill. App. 3d 378, 381-82, 493 N.E.2d 623, 625, citing *People v. Mitchell* (1970), 46 Ill. 2d 133, 134, 262 N.E.2d 915, 916.) Having determined that the defendant's claims are cognizable under the Post-Conviction Hearing Act, we now turn to the merits.

■ The defendant maintains that the circuit court's finding that no plea agreement had been reached between the defendant and the Madison County prosecutor was against the manifest weight of the evidence. The existence of a plea agreement and its terms and conditions are questions of fact to be determined by the trier of fact after assessing the credibility of the witnesses and the weight to be given their testimony, and the court's determination should not be reversed unless it is contrary to the manifest weight of the evidence. (*People v. Navarroli* (1988), 121 Ill. 2d 516, 521-22, 521 N.E.2d 891, 893.) Where manifest error is suggested by the record, however, a court of review will not hesitate to set aside the determination of the trial court. *People v. Banks* (1984), 121 Ill. App. 3d 279, 459 N.E.2d 992.

■ In the instant case, we find that the trial court's determination that there was no plea agreement was against the manifest weight of the evidence. It is clear from the records of the defendant's guilty plea and sentencing hearings in Missouri that the Missouri prosecutor, defense counsel, and the defendant all believed that the Madison County State's Attorney had agreed to recommend a 17-year concurrent sentence in Illinois in exchange for the defendant's guilty plea in Missouri. It is also clear that this agreement was a material factor in inducing the defendant to plead guilty to the Missouri charges. At the conclusion of the post-conviction hearing, however, the circuit court held that the agreement was not proved because the "purported agreement was denied by the other counsel involved in this case." While at one point the Madison County State's Attorney did deny that there was an agreement, he immediately qualified that denial by stating that he did not "have any recollection of any agreement." He also testified that he did not "recall entering into any agreement." We are not suggesting that the State's Attorney was being evasive. Indeed, one can only expect his memory to be less than clear on matters which occurred several years before and involved just one case among hundreds. Nevertheless, his answers concerning

the existence of the plea agreement were equivocal. Weighed against the statements of the other parties involved, made shortly after the time the purported agreement was reached, we are compelled to find that such a plea agreement was made. We emphasize that our finding is not based on the subjective beliefs of the parties involved, but rather on an objective evaluation of all the evidence presented. See *Navarroli*, 121 Ill. 2d at 521, 521 N.E.2d at 893 (terms of plea agreement are to be judged under objective standards).

After determining that a plea agreement existed, two issues remain: (1) whether the prosecutor breached the agreement; and (2) whether the plea agreement is enforceable. Based on the record, our interpretation of the plea agreement is that the Madison County prosecutor, in exchange for the defendant's guilty plea to the Missouri charges, promised to recommend that the defendant receive a concurrent sentence of 17 years upon pleading guilty in Illinois. Because no such recommendation was made, we find that the plea agreement was breached.

■ Under the proper circumstances, when the State breaches a plea agreement, the defendant is entitled to relief. (See *Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495; *People v. Starks* (1985), 106 Ill. 2d 441, 478 N.E.2d 350; *People v. Mitchell* (1986), 143 Ill. App. 3d 378, 493 N.E.2d 623; *People v. Graham* (1986), 140 Ill. App. 3d 273, 488 N.E.2d 617; *People v. Langston* (1984), 125 Ill. App. 3d 479, 466 N.E.2d 268.) In *Santobello*, the Supreme Court stated that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello*, 404 U.S. at 262, 30 L. Ed. 2d at 433, 92 S. Ct. at 499.) However, in *Mabry v. Johnson* (1984), 467 U.S. 504, 81 L. Ed. 2d 437, 104 S. Ct. 2543, the Supreme Court refused to enforce a plea agreement when the prosecutor repudiated the agreement before the defendant entered a guilty plea. In *Mabry*, the prosecutor withdrew an offer of a proposed plea agreement after the defendant had accepted it and then proposed another, less favorable, agreement. The defendant accepted the terms of the second agreement and pleaded guilty. The Court stated:

> "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is

that conviction which gave rise to the deprivation of respondent's liberty at issue here." (*Mabry*, 467 U.S. at 507-08, 81 L. Ed. 2d at 442, 104 S. Ct. at 2546.)

The Court refused to enforce the first plea agreement because the defendant knew that the second agreement controlled when he pleaded guilty. Similarly, the Illinois Supreme Court has refused to enforce plea agreements where the defendant has not surrendered constitutionally protected interests in reliance on the agreement. See *People v. Boyt* (1985), 109 Ill. 2d 403, 488 N.E.2d 264, *cert. denied* (1986), 476 U.S. 1143, 90 L. Ed. 2d 699, 106 S. Ct. 2254; *People v. Navarroli* (1988), 121 Ill. 2d 516, 521 N.E.2d 891.

In *Boyt* the defendant agreed to testify against her codefendant, Johnny Banks, and in exchange the State agreed to allow her to plead guilty to reduced charges. Banks pleaded guilty, however, and therefore the defendant's testimony was not needed. Thereafter the State refused to abide by the plea agreement, and the defendant sought specific performance. The Illinois Supreme Court found that the State's repudiation of the agreement was of no constitutional significance because the defendant did not plead guilty to any charge in reliance on the agreement. Even if the State had derived some benefit from the defendant's promise, stated the court, the plea agreement could not be enforced unless the defendant could show that she was deprived of her liberty in some fundamentally unfair way. *Boyt*, 109 Ill. 2d at 415, 488 N.E.2d at 270.

In *Navarroli* the defendant claimed that he acted as an informant in various drug investigations in exchange for the State's promise to reduce the charges against him. After aiding law enforcement officials in their investigations, which resulted in at least two arrests, the State's Attorney refused to reduce the charges against the defendant. The defendant sought to compel the State to carry out the plea agreement, and the Illinois Supreme Court held that it was not enforceable. The court, relying on *Mabry* and *Boyt*, held that the defendant was not deprived of liberty by virtue of the State's refusal to abide by the terms of the plea agreement because he had not entered a plea of guilty in reliance on the agreement. The court distinguished its decision in *People v. Starks* (1985), 106 Ill. 2d 441, 478 N.E.2d 350, wherein the defendant submitted to a polygraph examination in exchange for the prosecutor's promise to dismiss the charges pending against him if he passed the test. The *Starks* court concluded that enforcement of the promise was necessary because the defendant had surrendered his fifth amendment privilege in exchange for and reliance on the plea agreement. The *Navarroli* court found, in contrast,

that the defendant had not surrendered any constitutionally protected interest in reliance on the agreement. The court noted that the defendant's right to a fair trial was unimpaired, and he still had the option of pleading not guilty and going to trial. *Navarroli,* 121 Ill. 2d at 529, 521 N.E.2d at 896.

In the instant case, as in *Mabry,* the defendant accepted the prosecutor's new terms before pleading guilty in Illinois. Also, as in *Navarroli,* the defendant substantially performed his part of the bargain. Unlike either of those cases, however, here the defendant's partial performance consisted of pleading guilty to different but related crimes in another jurisdiction.

We believe there is no question that the defendant surrendered constitutionally protected interests when he pleaded guilty to the Missouri charges, and we have found that he did so in reliance on the plea agreement with the Illinois prosecutor. When the prosecutor subsequently breached his promise, the defendant "pleaded guilty on a false premise, and it cannot be said that his guilty plea was knowingly and voluntarily made." (*Boyt,* 109 Ill. 2d at 414, 488 N.E.2d at 269.) It is, however, the defendant's guilty plea *in Missouri* which was induced by the prosecution's promise; the defendant's plea in Illinois occurred after the prosecution had breached its part of the agreement. It might appear then, as the State argues, that the defendant's recourse is to seek relief in Missouri. We believe, however, that such a finding would be fundamentally unfair to the defendant.

First, the defendant has already served his sentence in Missouri and has been paroled from that State. For him to seek to withdraw his plea now would be nonsensical. Second, if the defendant did seek to withdraw his Missouri plea, he would almost certainly fail. A Missouri court is not bound by the promise of an Illinois prosecutor, and the defendant's claim that such a promise was breached is likely to be ignored. Finally, a Missouri court obviously does not have the power to enforce an agreement between the defendant and an official of the State of Illinois. This court, on the other hand, has not only the power but the duty to enforce such agreements where the defendant has relinquished his constitutional rights in reliance on that agreement. We hold, therefore, that the defendant is entitled to specific enforcement of his agreement with the prosecutor.

Enforcement of the agreement does not, however, as the defendant assumes, require a modification of the defendant's sentence to a 17-year term. The Madison County prosecutor only promised to *recommend* a 17-year concurrent sentence. He did not promise that the defendant would *receive* a 17-year sentence, nor could he have

done so. (See *People v. Goodman* (1971), 2 Ill. App. 3d 584, 588-89, 277 N.E.2d 136, 139 (parties to plea agreement cannot bind court to terms of which it has no knowledge).) Sentencing is the function of the trial court, and it is free to accept or reject the terms of a plea agreement. (See Supreme Court Rule 402, 107 Ill. 2d R. 402.)

We therefore vacate the defendant's sentence.

If the court chooses not to concur in the plea agreement between the State and the defendant, the court shall inform the defendant, pursuant to Supreme Court Rule 402 (107 Ill. 2d R. 402), that it is not bound by the agreement and the court shall then allow the defendant to withdraw his guilty plea if he desires. By vacating sentence and requiring the recommendation by the State as set forth in this paragraph, we do not preclude some other disposition of this case after the terms of the orders contained in this paragraph have been followed.

In view of the above disposition, we need not discuss the defendant's argument concerning ineffective assistance of counsel.

Sentence vacated; reversed and remanded with directions.

GOLDENHERSH and HOWERTON, JJ., concur.